ROBERT E. MCKEE, GENERAL CONTRACTOR, INC.,
v. DAVID B. PATTERSON

No. A-4501. Decided June 30, 1954.
Rehearing overruled October 20, 1954.
(271 S.W. 2nd Series 391)

518

*Cecil, Keith & Mehaffy* and *Quentin Keith*, of Beaumont, for petitioner.

*Orgain, Bell & Tucker* and *John G. Tucker*, of Beaumont, for respondents.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Petitioner, who was defendant in the trial court in a suit for damages filed by respondent as plaintiff, was the general contractor engaged to erect a public school building and gymnasium in Port Arthur. It engaged plaintiff's employer, Horn Brothers Company, as subcontractor to install certain folding partitions and bleachers in the gymnasium, and engaged J. A. Honeycutt as subcontractor to finish the gymnasium floor. It was the duty of defendant's general superintendent to schedule and coordinate the work of all subcontractors.

After Horn Brothers had begun their work in the gymnasium, they were called off of the job so that Honeycutt could finish, sand and polish the floor. When the floor work was finished, Horn Brothers' employees were called back to complete their work. These employees had been working on the slick floor for two weeks when a ladder, which the plaintiff had ascended to do certain overhead work, slipped, and the plaintiff fell to the floor and was injured. Suit followed.

The case was submitted to a jury on special issues, and the trial court's judgment in favor of the plaintiff was based on the following jury findings: (1) It was negligence to allow the finishing of the floor before completion of the carpenter work and such negligence was a proximate cause of plaintiff's injuries; (2) The finished floor was not reasonably safe for the type of work being done by plaintiff; the defendant failed to use due

care to furnish plaintiff a reasonably safe floor on which to work, and such failure was a proximate cause of plaintiff's injuries; (3) The plaintiff was no negligent in climbing the ladder without having his helper hold the legs thereof; (4) The plaintiff was not negligent in failing to use a scaffold rather than the ladder; and (5) Plaintiff's injuries were not the result of an unavoidable accident.

The Court of Civil Appeals has affirmed the trial court's judgment. 263 S.W. 2d 326.

By two points of error defendant presents three reasons, all properly preserved through motion for instructed verdict and motion for judgment notwithstanding the verdict, why, as a matter of law, the judgment of the courts below cannot stand, viz: (1) There is no evidence that the defendant was guilty of negligence or breached any duty owing to the plaintiff; (2) The plaintiff voluntarily exposed himself to the hazards created by the slick floor, and (3) The evidence shows conclusively that the plaintiff was guilty of contributory negligence which was a proximate cause of his injuries.

Defendant's points of error pose the oft-recurring problem of liability for injuries growing out of open and obvious conditions. The problem is quite fully examined in an article by Keeton appearing in the University of Pennsylvania Law Review. 100 Pa. L. Rev. 629-648. The article raises many as yet unanswered questions.

A general contractor in control of premises owes a duty to the employees of subcontractors similar to that owed by an owner or occupier of land to his invitees. Smith v. Henger, 148 Texas 456, 226 S.W. 2d 425, 20 A.L.R. 2d 853. See also annotation, 20 A.L.R. 2d 868, 873, et seq.

There are two legal theories, wholly aside from the plaintiff's own negligence, for denying liability in a suit against an owner or occupier of land brought by an invitee for injuries growing out of open and obvious dangers thereon. One rests on the judicial concept that there is no breach of any duty the landowner owes to his invitees. The other arises out of the doctrine of volenti non fit injuria — voluntary encountering of risk — which is regarded as a defense to all negligence actions. In this state both theories are recognized. Actually, in their application to a given fact situation the two theories so completely overlap

as to be almost indistinguishable. Actually, also, the defenses of voluntary exposure to risk and contributory negligence are frequently treated as one and the same. The failure of counsel to segregate and separately preserve all of these questions in pleadings in the trial courts and in briefs in the appellate courts, thereby offering the appellate courts no alternative except to decide the cases before them on the questions presented, and the tendency of the appellate courts to group them in analyzing the evidence, or to seek the most obvious and simplest solution, has led to much confusion in the decided cases. In greatly similar fact situations some are decided on the basis of no breach of duty by the defendant, some on the basis of voluntary encountering of risk by the plaintiff, some on the basis of the contributory negligence of the plaintiff, and some on the basis of two or more of these factors without distinction between them. This has led to what appears to be conflicting results.

The burden was on the plaintiff, Patterson, to prove his case. To discharge that burden it was necessary that he adduce evidence showing not only that the defendant was negligent in the sense that he created or maintained a condition on the premises giving rise to an unreasonable risk of injury to persons thereon, but also that as to the class of persons to which the plaintiff belonged there was a breach of duty. In the instant fact situation, for example, a trespasser could not establish liability of the defendant because he could not prove a breach of any duty the defendant owed him. It logically follows that we must first determine whether in this case there was evidence to support a finding of a breach of duty by the defendant before we reach the other questions presented by the defenses of voluntary exposure to risk and contributory negligence.

■■ In determining whether a landowner is liable to an invitee for injuries sustained on the premises, the duty of the landowner is frequently phrased as one "to exercise ordinary care to keep the premises in a reasonably safe condition" so that the invitee will not be injured. Carlisle v. Weingarten, Inc., 137 Texas 220 152 S.W. 2d 1073, 1074; Walgreen-Texas Co. v. Shivers, 137 Texas 493, 154 S.W. 2d 625, 628-629; Renfro Drug Co. v. Lewis, 149 Texas 507, 235 S.W. 2d 609, 615. But that is only a simplified statement of the duty, sufficient to meet the problems presented in the particular cases. There are certain qualifications not there expressed. It is now well established in this state that the duty as there expressed does not extend to those invitees who know or should know of the existence of

the particular condition and who appreciate or should appreciate its dangers. Hall v. Medical Bldg. of Houston, 151 Texas 425, 251 S.W. 2d 497; A. C. Burton Co., Inc. v. Stasny, Texas Civ. App., 223 S.W. 2d 310, writ refused; Houston National Bank v. Adair, 146 Texas 387, 207 S.W. 2d 374; Hausman Packing Co. v. Badwey, Texas Civ. App., 147 S.W. 2d 856, writ refused; Marshall v. San Jacinto Bldg., Texas Civ. App., 67 S.W. 2d 372, writ refused. What the qualification means, of course, is that inasmuch as the invitee has knowledge of the dangers there is no duty on the owner to warn him of them. It means also that if, having knowledge of the dangers, the invitee exposes himself to them he must take the premises as he finds them and there is no duty on the owner to protect him even by the use of reasonable precautions to eliminate the hazards.

In determining liability, under the defense of voluntary exposure to risk, it is said that one cannot recover for injuries sustained while voluntarily exposing himself to a danger which he either does or should fully realize and appreciate. 38 Am. Jur. 845 et seq., Negligence, Secs. 171-173; 65 C.J.S. 848, et seq., Negligence, Sec. 174; Levlon et ux v. Dallas Ry. & Terminal Co., Texas Civ. App., 117 S.W. 2d 876, writ refused; Wood v. Kane Boiler Works, 150 Texas 191, 238 S.W. 2d 172, 174; Schiller v. Rice, 151 Texas 116, 246 S.W. 2d 607, 610.

The only apparent difference in the usual statement of the two theories for determining liability is that the defensive theory is made to rest on the *voluntary* character of the plaintiff's conduct in encountering the danger, whereas that qualfying word is rarely found in the statement of the no duty rule; and yet an examination of the cases reflects that where liability has been denied on the ground that dangers on the premises were open and obvious the facts show that the invitee voluntarily encountered them.

It would greatly simplify our procedural problems if we could follow the course suggested by the San Antonio Court of Civil Appeals in Camp v. J. H. Kirkpatrick Co., 250 S.W. 2d 413, writ refused, N.R.E., and let this class of cases fall into the pattern of the usual negligence case, deciding the question of negligence and breach of duty on the part of the owner by looking only to his conduct and the question of voluntary exposure to risk on the part of the invitee by looking alone to his conduct, but to do so would be to ignore the well-settled law of this state, as expressed in the cases above cited, that there is no

duty on the owner of premises to take precautions to protect his invitee from dangers on the premises of which the invitee is or should be fully aware and which he voluntarily encounters. To determine the existence and the extent of the owner's duty we must therefore look not only to the conduct of the owner but to the conduct of the invitee as well. It may well be that when we examine the conduct of the invitee for the purpose of deciding whether there has been a breach of duty by the owner we necessarily decide, as an incident thereto, the defensive issue of voluntary exposure to risk, with the result that a decision of the first question follows a decision of the second automatically. This was precisely the situation with which this court was confronted by the motion for rehearing in Wood v. Kane Boiler Works, 150 Texas 191, 238 S.W. 2d 172, 180. But this resulting intermingling of the two problems would not justify our rewriting the substantive law of the state to impose a duty where it is so firmly established none exists. Even if voluntary exposure to risk be not pleaded as a defense the duty question would still be present. On the other hand, the problem being presented by the facts so as to raise the question of "no duty", there would seem to be little or no place in the case for the defense of voluntary exposure to risk except, perhaps, to highlight the problem. If the case were submitted on special issues placing on the plaintiff the burden of proving that the dangers were not so open and apparent that he should have realized them, the defendant could hardly be prejudiced or heard to complain because of the refusal of the trial court to resubmit the same issues, from a defensive standpoint, with a less onerous burden on the plaintiff.

■ In all such cases, knowledge of the existence of the condition and appreciation of the danger therein by the parties are important factors in determining liability, but the rule for determining whether the parties should have known of the condition and appreciated its danger is not always the same as to each. The owner is charged with knowledge of any dangerous condition that a reasonable inspection would have revealed because his duty to keep his premises in a reasonably safe condition for use by his invitees includes a duty to inspect. Smith v. Henger, supra; R. E. Cox Dry Goods Co. v. Kellog, Texas Civ. App., 145 S.W. 2d 675, writ refused. There is no such obligation on the invitee. Peck v. Peck, 99 Texas 10, 87 S.W. 248; Triangle Motors of Dallas v. Richmond, 152 Texas 354, 258 S.W. 2d 60, 63. While he may not close his eye to obvious dangers, he has a right to assume that the premises are safe for his use. Blanks v. Southland Hotel, Inc., 149 Texas 139, 229 S.W. 2d 357, 360;

Triangle Motors of Dallas v. Richmond, supra; Restatement of Torts, Vol. 2, Secs. 343e and 343d.

In order to fix liability on the owner it must first be established that he knew or should have known of the existence of the condition and that he should have appreciated its dangers. Once this is established either as a matter of law or by a fact finding, the inquiry then turns to what was known and appreciated, or should have been known and appreciated, by the invitee. In some cases, the existence of the condition may be so open and obvious and the dangers inherent in it so apparent that we may say as a matter of law that the invitee should have known of and appreciated them. Houston National Bank v. Adair, 146 Texas 387, 207 S.W. 2d 374; Marshall v. San Jacinto Bldg., Texas Civ. App., 67 S.W. 2d 372, writ refused; A. C. Burton Co. v. Stasny, Texas Civ. App., 223 S.W. 2d 310, writ refused; United Gas Corp v. Crawford, 141 Texas 332, 172 S.W. 2d 297. In others, whether the condition was so open and obvious and the dangers in it so apparent that the invitee should have known of them may be fact questions. Triangle Motors of Dallas v. Richmond, 152 Texas 354, 258 S.W. 2d 60; Hall v. Medical Bldg. of Houston, 151 Texas 425, 251 S.W. 2d 497; Blanks v. Southland Hotel, 149 Texas 139, 229 S.W. 2d 357.

In this case we may say without any doubt that the defendant through its superintendent knew of the slick condition of the floor. There is testimony in the record that the superintendent was warned that the manner in which he was scheduling the work would create a dangerous condition and the superintendent himself testified that he knew working on a slick floor was hazardous. There was testimony that the finishing of the floor before the overhead work was completed was in violation of custom. Without so deciding we will assume for the purposes of this opinion that the testimony here mentioned supports the findings of the jury that the premature finishing of the floor was negligence in the sense that no reasonably prudent contractor would have scheduled the work in that order.

At the same time, plaintiff's own testimony, by which he is bound, established that he also knew of the slick condition of the floor and fully appreciated the danger of working on it. He testified that a man would know that a ladder was more likely to slip on a finished floor, and further: "We told them it would create a dangerous supposition (sic) there to work under." Q. "Did you tell them that beforehand?" A. "Yes, they were told it before we were pulled off the job."

The issue here, then, is narrowed to this: When both parties had knowledge of the condition and appreciated the danger, did the defendant breach any duty it owed to the plaintiff? The qualification, above noted, to the general rule of duty to use ordinary care to protect invitees from injuries resulting from unsafe conditions, exists only when the invitee, confronted with the existence of a condition of which he knows, containing dangers which he appreciates, *voluntarily* encounters them; it must be done "of his own free will and as a result of an 'intelligent choice.' " Wood v. Kane Boiler Works, 150 Texas 191, 238 S.W. 2d. 172, 174, 178.

In this case the plaintiff suggests that there was a breach of duty because he did not voluntarily expose himself to the risk in that he was placed in a situation where he had no alternative; he either had to work on the slick floor or not do the work which he was obligated to do at all.

There are Texas cases which have turned on the same general theory: Gulf, C. & S. F. Ry. Co. v. Gascamp, 69 Texas 545, 7 S.W. 227; Texas & N. O. Ry. Co. v. Wood, Texas Civ. App., 166 S.W. 2d 141, no writ history. In the Gascamp case the plaintiff was injured while crossing a defective bridge, known to him to be dangerous. While the conduct of the plaintiff was analyzed under rules governing the defense of contributory negligence, it was nevertheless held that he was not barred from a recovery as a matter of law since he had no reasonable alternative to encountering the known dangers of the defective bridge. In the Wood case the plaintiff was injured while using a loading platform, with open and obvious defects, for the purpose of loading cattle for shipment. It was held that a recovery was not barred on the ground of voluntary encountering of the dangers of the defective platform since it was the only platform furnished by the railroad for use in loading cattle and the plaintiff was under "economic compulsion" to use it.

■ So far as we have been able to discover the courts of this state have never held that the necessity of performing his duties and of earning a livelihood was such economic compulsion or constraint as to render involuntary the workman's choice of accepting or retaining employment in the face of known and appreciated dangers. In the early case of Bonn v. Galveston, H. & S. A. Ry. Co., Texas Civ. App., 82 S.W. 808, 814, no writ history, it is said: "The mere fact that a servant exposed himself to an obnormal risk because he feared if he did not do this

he would lose his position, is not considered to be evidence of any legal constraint."

The contention here presented by the plaintiff was, at one time, the subject of much controversy in England. It was the early view of the judges of that country that the laborer was free to make a choice — to take a job or reject it, keep it ·or leave it — and that if he took it and kept it in the face of obvious dangers he would be held to have assumed the risk of injury from such dangers. Labatt's Master & Servant, Second Edition, Vol. 3, Secs. 1301-1303, pp. 3649-3659, and cases cited in foot-notes. Lord Bramwell put his views in this language: "It is said that to hold the plaintiff is not to recover is to hold that a master may carry on his work in a dangerous way and damage his servant. I do so hold, if the servant is foolish enough to agree to it." Smith v. Baker (1891) A.C. 325, 346. This view was modified in England before the turn of the century; but, except as modified by Employer's Liability and Workmen's Compensation Acts, it was adopted as the almost universally approved rule in American jurisdictions. Labatt, supra, Secs. 1182, 1293, 1294; 29 Texas Jur. 54, Master and Servant, Sec. 29; 35 Am. Jur. 727, Master and Servant, Sec. 302; 56 C.J.S. 1189, 1195, Master and Servant, Secs. 382, 387. This extreme common law view, which traded on the economic necessity of the workman to earn a living, resulted in the adoption of Liability and Compensation Acts to offer a measure of certain protection to the workman. The plaintiff here collected benefits under the Workmen's Compensation Act. In cases where legislation has not abolished the defense of assumed risk, the common law rule still prevails in this country in master and servant relationships. It applies as universally and with equal force to employees of independent contractors who are injured by exposing themselves to open and obvious dangers on the premises. See cases cited in Annotation in 44 A.L.R. 932, at page 1122, et seq.

■ It follows from what has been said that in working on the slick floor the plaintiff voluntarily exposed himself to the dangers thereof which he fully realized and the defendant breached no duty it owed him.

Having concluded that the plaintiff failed, as a matter of law, to establish a breach of duty by the defendant, it becomes unnecessary to examine the defendant's contention that the plaintiff was contributorily negligent as a matter of law·in failing to have his helper hold the legs of the ladder.

The judgments of the courts below are reversed and judgment is here rendered that plaintiff take nothing.

Openinion delivered June 30, 1954.

MR. JUSTICE GRIFFIN, joined by JUSTICE SMITH, dissenting.

I do not agree that this case is one where the plaintiff (workman) assumed the risk of being injured by getting on the ladder to complete the work required by the general contract. The evidence establishes that it was necessary to use the ladder to complete this particular job. The general contractor — the petitioner herein — was under the duty to furnish to Patterson a safe place to work and that duty was a continuing duty until the contract was completed. Petitioner voluntarily chose to complete the floor and finish it so that it was slick, prior to the completion by Patterson's employer of his sub-contract, thereby violating the usual custom of the building trade on similar jobs. To have followed the usual custom would not have exposed Patterson to the risk of having to work on the slick floor. Patterson had no control over the finishing of the floor at a time prior to the completion of his work. Patterson had no other alternative than to complete his work on the slick floor so furnished by petitioner.

Under these facts, I do not believe Patterson should be held, as a matter of law, to have assumed the risk of being hurt. I believe a fact issue was raised, and that the judgments of both courts below should be affirmed on the authority of Gulf, C. & S. Ry. Co. v. Gascamp, 69 Texas 545, 7 S.W. 227; and Texas & N. O. R. Co. v. Wood, Texas Civ. App., 166 S.W. 2d 141. I do not believe that under the rules laid down by us in the recent case of Wood v. Kane Boiler Works, Inc., 150 Texas 191, 238 S.W. 2d 172, 176. Patterson "voluntarily and by the exercise of an 'intelligent choice' agreed" to assume the risk of injury when he climbed the ladder in order to complete his job.

June 30, 1954.

Rehearing overruled October 20, 1954.