**PHILLIPS PETROLEUM COMPANY,**
Appellant,

v.

**Joe GIBSON and Traders and General In-surance Company, Intervenor,**
Appellees.

No. 15653.

United States Court of Appeals
Fifth Circuit.

April 19, 1956.

Rehearing Denied May 23, 1956.

William L. Kerr, Carl W. Jones, Layton A. Webb, Midland, Tex., Rayburn L. Foster, Bartlesville, Okl., Raymond A. Lynch, Midland, Tex., Harry D. Turner, Bartlesville, Okl., Turpin, Kerr & Smith, Midland, Tex., of counsel, for appellant.

W. O. Shafer, Odessa, Tex., Henry D. Akin, Jr., Claude Williams, J. O. Bean, Dallas, Tex., McDonald & Shafer, Odessa, Tex., Gallagher, Francis, Bean, Wilson & Berry, Williams & Akin, Dallas, Tex., for appellees.

Before BORAH, TUTTLE and JONES, Circuit Judges.

BORAH, Circuit Judge.

Joe Gibson brought this suit against Phillips Petroleum Company, seeking damages for personal injuries sustained by him as the result of the explosion of a kerosene drum upon which he was standing while welding on Phillips' premises. Thereafter, Traders & General Insurance Company intervened, adopting the pleadings of plaintiff.[1] In his complaint Gibson alleged that the defendant was guilty of negligence which proximately caused his injury. More specifically it was alleged that the defendant failed: (1) to furnish plaintiff with a reasonably safe place in which to do his work and with reasonably safe equipment; (2) to keep a proper lookout for the plaintiff; (3) to make reasonable inspection of the drum in question and to clean said drum and remove the fumes before furnishing it to plaintiff; (4) to tell the plaintiff that the drum in question contained explosive fumes; and (5)

to warn plaintiff of the unsafe condition of the drum and of the unsafe condition of its premises.

At the trial the court charged the jury that if plaintiff knew or should have known of the dangers and risks to which he submitted himself, or if he failed to exercise ordinary care for his own safety, or if the injury was brought about by transitory conditions which arose during the progress of the work, or if plaintiff was guilty of contributory negligence, defendant would not be liable. But on the other hand, if the jury found that the defendant had negligently failed to provide plaintiff, a business invitee, with a safe place to work, and that such negligence proximately caused plaintiff's injury, defendant would be liable. The jury under the general charge of the court returned a verdict in favor of the plaintiff in the amount of $40,000, and this appeal is from the judgment which was entered thereon.

Appellant's principal assignments of error relate to the failure of the trial court to grant its motion for directed verdict and its motion for judgment n. o. v. In support thereof it is urged that appellant breached no duty owed by it to Gibson, in that it was under no duty to keep him from doing that which he knew better than to do nor was it under a duty to guard him against the hazards which he created; that Gibson voluntarily exposed himself to the dangers with which he became involved; that there was no evidence to show that the place of work was a proximate cause of his accident; that the whole of the evidence established that the accident occurred because of Gibson's own acts; and that Gibson was guilty of contributory negligence as a matter of law in that he exercised no degree of care whatever for his own safety. These assignments thus present two principal questions: first, whether appellant breached any duty owed to Gibson, and secondly, whether as a matter of law Gibson's injury proxi-

1. Intervenor, the insurer of Grady Bars, welding contractor the employer of plaintiff, sought to recoup workmen's compensation payments made to plaintiff and attorney fees.

mately resulted from his contributory negligence.

On review of a case such as this, there are several considerations which must be kept in mind. It is well settled law that cases are not to be lightly taken from the jury; that jurors are the recognized triers of questions of fact; and that negligence and proximate cause are questions of fact to be properly submitted to and determined by jurors from a consideration of all the attending facts and circumstances. On a motion for a directed verdict, as well as on motion for judgment n. o. v., it is the duty of the court to accept as true all the facts which the evidence tends to prove, and draw against the party making the motion all reasonable inferences most favorable to the party opposing the motion, and if the evidence is of such a character that reasonable men in an impartial exercise of their judgment may reach different conclusions, then the case should be submitted to the jury. Swift & Co. v. Morgan & Sturdivant, 5 Cir., 214 F.2d 115, 116.

The evidence viewed in the light most favorable to appellee Gibson is as follows: In February, 1952, appellant, acting through its rig supervisor Cecil Parsons, and one Grady Bars, a welding contractor, entered into an oral contract, under the terms of which it was agreed that Bars was to convert a "mud house",[2] into a "dog house",[3] and then install it on appellant's active drilling rig No. 28. It was mutually agreed that appellant was to supply the needed steel and that Bars was to furnish the workmen, welding equipment and all things except the materials which were needed to do the work. At the time the contract was entered into no mention was made as to who was to furnish scaffolding or equipment upon which to stand when overhead welding work required such equipment. But anticipating that metal drums might be used for that purpose, Parsons as a precautionary measure ordered his employees to move all of the empty gasoline and kerosene drums away from the drilling rig and the site of the "dog house."

When work under the contract began, Bars assigned Gibson to work with him on the conversion of the "dog house". Gibson, a former oil field worker, was an experienced welder and, among other jobs, had done welding work around oil rigs and in a high octane gasoline plant. The conversion work was started at one lease location, but before its completion, the "dog house" was moved to a flat piece of ground on or adjacent to the large caliche covered area on which rig No. 28 was located. By estimated measurement the "dog house" was placed 150 feet southwest of the rig and it was conceded at the trial that its placement at this point did not make Gibson's work either hazardous or dangerous.

At the first location where a part of the conversion work was performed, Bars furnished four or five metal water barrels or drums on which to stand while welding overhead. These "bent up" drums, which had originally been used as oil drums, had been picked up by Bars in January, 1952, on a previous welding job. And when the "dog house" was moved Bars carried these drums in his truck to the new location where they were used for the purpose aforementioned during the first few days of work.

On the morning of February 7, 1952, which was the day immediately preceding the accident, Gibson performed welding work on both the inside and outside of the "dog house." The work which he did on the outside was overhead work on the new doors which had been cut in the north and south sides of the structure. Gibson testified that "Red" Koonz, one of appellant's employees whose services when needed had been made available to him, had that day procured a drum on which he stood while working overhead; and that upon completion of this work he left the drum on the north side of the

2. A steel house, 28x7x7½ feet, used for storing drilling mud.

3. A clothes-changing house for the driller.

house where he had been working. It further appears from the uncontradicted evidence that at least two of Bars' water barrels had on that day been left in place on the west side and about 2½ feet away from the "dog house."

On the afternoon of the same day, Gibson did some work on the derrick in connection with the installation of the "dog house," and on that occasion, he procured a drum from Koonz and stood on it while working overhead. At the close of the day, the drum on which he had stood that afternoon was left under the derrick floor which was approximately 150 feet away from the "dog house."

On the following morning, the day of the accident, Gibson and Bars arrived at the job site in separate trucks. They knew that an overhead pipe was to be cut out of the "dog house" before it was lifted into place on the derrick and each "unrolled" his electric welding equipment preparatory to going to work. Bars intended to do this "two or three minute" job alone, and had placed a 5-gallon bucket on the porch at the north doorway on which to stand while doing the work. But having forgotten his welding goggles he returned to his truck to get them. Gibson, unaware of Bars' intentions, concluded that he would do the work, but found the bucket too low for his use. Whereupon he stepped off the porch and walked eight or ten feet toward the derrick where he found a 55-gallon metal drum which, unknown to him, had last contained kerosene. He carried this drum to the porch of the "dog house", stepped upon it with the aid of the bucket and began cutting out the pipe with his electric welder. Thereupon, sparks or flame from the falling slag or metal which he was cutting ignited the fumes from the empty drum and a violent explosion occurred which resulted in the injuries complained of.

The drum which exploded was the property of Johnson Brothers, the oil jobbers who furnished the motor oil, gasoline and kerosene which appellant used in connection with its operations at the drilling rig. Gibson testified that he did not think that the drum was one of the water barrels which Bars had originally provided, or that it was the drum which had been provided by Koonz for the work which he had done on the derrick. But on the contrary, he thought that the drum which he picked up was the same one on which he had stood while working on the "dog house" the previous day, although he frankly admitted that it was three or four feet away from the place where he thought he had left a drum on the preceding day.

The evidence in this record is all one way and to the effect that Gibson knew that petroleum fuels were required for the drilling of the nearby well; that such fuels would be transported to the location in drums; that it was to be expected that empty fuel drums would be around active drilling rigs; that these drums would be empties for gasoline, kerosene and motor oil; that "empty" drums were more likely to have fumes in them than full ones; that the fact that they were "empty" would make them all the more dangerous; and that it would be dangerous to have a flame around an oil, kerosene or gasoline drum. Despite this knowledge and under the circumstance which we have detailed above Gibson testified that he picked up a drum which looked like the one he had used the day preceding the accident but that he did not exercise his sense of smell to determine its former contents; nor did he examine the drum to ascertain whether the two-inch and one-inch openings which were located on one end of the drum were open or closed, but that he simply set the drum in place for use with the "bung holes" down.

Thus, it is clear from the evidence that Gibson alone procured the kerosene drum, and that no employee of appellant directed him to it or suggested its use. Indeed, no employee of appellant had on that day visited the scene of the accident prior to its occurrence.

Under Texas law, by which we are bound, the burden was on Gibson to

prove his case. To discharge that burden it was necessary that he adduce evidence showing not only that appellant was negligent in the sense that he created or maintained a condition on the premises giving rise to an unreasonable risk of injury to persons thereon, but also that as to the class of persons to which Gibson belonged there was a breach of duty. It follows that we must first determine whether in this case there was evidence to support a finding of a breach of duty by the appellant before we reach the other questions presented by the defenses of voluntary exposure to risk and contributory negligence.

In our approach to the immediate problem at hand, we have read numerous Texas cases, such as Walgreen-Texas Co. v. Shivers, 137 Tex. 493, 154 S.W.2d 625, 628, wherein the courts have had occasion to consider whether a landowner was liable to an invitee for injuries sustained on the premises, and we have noted that in speaking of the duty of an owner or occupier of land, the courts have frequently said that the duty is to "use ordinary care to keep such premises in a reasonably safe condition, so that the person invited will not be injured." "But," as was pointed out in Robert E. McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391, 393, that phraseology "is only a simplified statement of the duty sufficient to meet the problems presented in the particular cases", and this statement is subject to certain qualifications not therein expressed in that it is now well established in Texas that the duty of the owner or occupier of land "does not extend to those invitees who know or should know of the existence of the particular condition and who appreciate or should appreciate its dangers. * * * What the qualification means, of course, is that inasmuch as the invitee has knowledge of the dangers there is no duty on the owner to warn him of them. It means also that if, having knowledge of the dangers, the invitee exposes himself to them he must take the premises as he finds them and there is no duty on the owner to protect

him even by the use of reasonable precautions to eliminate the hazards."

Accordingly, in order to fasten liability on the owner or occupier of land, it must first be established that he knew or should have known of the existence of the condition and that he should have appreciated its dangers. Once this is established, it is necessary to determine what was known and appreciated, or should have been fully realized and appreciated by the invitee. In some cases, the existence of the condition may be so open and obvious and the dangers in it so apparent that the court may say *as a matter of law* that the invitee should have known of and appreciated them. Robert E. McKee, General Contractor v. Patterson, supra, United Gas Corp. v. Crawford, 141 Tex. 332, 172 S.W.2d 297; Beeville Cotton Oil Co. v. Sells, Tex.Civ. App., 84 S.W.2d 575. But in others, whether the condition was such that the invitee should have known of its dangers may present a fact question for the jury. Crow v. Continental Oil Co., 5 Cir., 115 F.2d 740; Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853; McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.2d 442.

In the case at bar, the evidence clearly shows that appellant was cognizant of the dangerous condition. Indeed, it took affirmative steps to remove the gasoline and kerosene drums from the immediate vicinity of the work place so that they would not be used in connection with the welding operations. Likewise, Gibson's own testimony, by which he is bound, clearly established that he was also aware of the danger involved in using drums which might be found on the premises of an active drilling rig and that he fully appreciated the danger of using a cutting torch around a drum which had had either gasoline or kerosene in it, and yet he picked up a drum on the premises, concededly not in the identical place where he had previously left a drum, and used it without any examination whatever to determine its former contents and without even ob-

serving whether the openings therein were closed. The issue here, then, is narrowed to this: when both Gibson and appellant were fully aware of these dangers, did appellant breach any duty it owed to Gibson? The qualification, above noted, to the general rule of duty to use ordinary care to protect invitees from injuries resulting from unsafe conditions, exists only when the invitee, confronted with the existence of a condition of which he knows and containing dangers which he appreciates, voluntarily encounters them. We hold that Gibson here made such a choice, voluntarily encountering the danger, and consequently, under Texas law, appellant breached no duty to him.

Moreover, the evidence which we have detailed above establishes as a matter of law that Gibson's own negligence was the sole proximate cause of his injury. It is a well-established rule of law that a duty rests upon everyone to exercise his intelligence to the fullest extent and to make such use of his external senses in the interest of his own safety as is reasonable under the circumstances, and one injured as a result of his failure to use his faculties to observe and discover a danger which would have been observed and discovered by an ordinarily prudent person is guilty of contributory negligence. United States Gypsum Co. v. Balfanz, 5 Cir., 193 F.2d 1, 4. If Gibson had taken some precaution and care for his own safety, it would have been for the jury to determine whether he had exercised such care as an ordinary prudent person would have exercised under like or similar circumstances to avoid receiving the injury. But here it is clear that he took no care whatsoever. Consequently, the matter was not for submission to the jury but should have been disposed of by the court by an instructed verdict.

It was error to refuse to direct a verdict for appellant and because of that error, the judgment of the District Court is reversed and judgment is here rendered for appellant.

Reversed and rendered.