**CALLIHAN INTERESTS, INC., et al.,**
Appellants,

v.

**Natalie K. HALEPESKA et al., Appellees.**

No. 3616.

Court of Civil Appeals of Texas.

Eastland.

Sept. 8, 1961.

Rehearing Denied Oct. 13, 1961.

McMahon, Smart, Sprain, Wilson & Camp, Abilene, for appellants.

Childers & Garrett, Abilene, Hill, Brown, Kronzer & Abraham, Houston, for appellees.

COLLINGS, Justice.

This suit was brought by Natalie K. Halepeska, individually, as independent executrix of the estate of Dennis L. Halepeska and as next friend and guardian of the surviving children of the plaintiff and Dennis L. Halepeska. Plaintiff sought to recover $450,000 from defendants Callihan Interests, Inc., a corporation, Ernestine Callihan Farnsworth and Edward L. Farnsworth. Recovery was sought for the alleged wrongful death of Dennis L. Halepeska, a consulting geologist for Callihan Interests, Inc., which occurred on or about December 17, 1958, on the Smith lease which belonged to defendants. Based upon certain findings of a jury and in disregard to other jury findings, upon motion for judgment non obstante veredicto, judgment was entered for the widow in the sum of $45,000 and in favor of the four minor plaintiffs in the total sum of $40,000. A take nothing judgment was entered in favor of Ernestine Callihan Farnsworth and her husband, Edward L. Farnsworth. Callihan Interests, Inc., has appealed.

Dennis L. Halepeska at the time of his death was thirty-seven years of age. He was a geologist and for several years was consulting geologist for numerous companies. In 1954 Halepeska was employed as a geologist by Callihan Interests, Inc. On or about March 1, 1958, Halepeska was made a vice president of Callihan Interests, Inc., and held that position until the time of his death on December 17, 1958. Prior to the time he became vice president, he had been a full time employee of the defendant corporation, but when, in the course of a corporate reorganization, he was made a vice president he was thereafter permitted to do work for other individuals and companies as a geologist. His skills and allegiance, when required, belonged to appellant

corporation and his duties to such company when his services were required and called for remained identically the same as they had formerly been. Halepeska's duties with appellant corporation consisted partly of advising appellant as to the purchase value of leasehold interests. He also "sat on wells" as they were being drilled, particularly when pay formations were encountered and when tests were being made. There was testimony to the effect that at such times he, as geologist, was in charge and that it was "up to him" to tell the employees of the company what to do. Halepeska's duties required his presence on numerous occasions during the drilling and completion of oil and gas wells by appellant. He had been present on the Smith lease in Callahan County, where the fatal accident occurred, practically every day during the more than twenty days in 1955 when the gas well in question was being drilled and tested.

The well had been completed as a commercial producer. The evidence indicates that Halepeska knew the well had a bottom hole pressure of 1300 or 1400 pounds per square inch. From time to time it had been necessary to release the bottom hole pressure and to "flow" or "blow" the well. This process was also referred to as "bleeding". The well had been so treated on several occasions. A flow line consisting of two twenty feet joints of pipe had been added to the equipment of the well through which the gas could be permitted to escape. The evidence shows that Clark Howell and Emmett Price, who were employees of appellant corporation, had bled the well two days before the fatal accident. Halepeska and D. F. Morris, an employee and official of appellant corporation, were killed on the day in question while in the process of "flowing" said well. There were no witnesses to the accident now living and the case was developed from conversations and activities preceding the accident and physical evidence found on the ground.

It was found by the jury that appellant was guilty of negligence in failing to sufficiently stake down the flow line in question and that such negligence was a proximate cause of the death of Dennis L. Halepeska. Numerous other issues concerning alleged negligence on the part of appellant were found in appellant's favor. The jury also found in response to special issues numbers 20a, 20b and 20c as follows: that just before the valves on the well were opened, in the exercise of ordinary care, Dennis Halepeska should have had full knowledge of the manner in which the well was equipped; that just before the time the valves were opened, in the exercise of ordinary care, Dennis Halepeska should have appreciated the extent of the danger in opening said valves and that Dennis Halepeska voluntarily exposed himself to such danger, which in the exercise of ordinary care he should have known and appreciated. The jury had also found that Halepeska did not have full knowledge of the manner in which the well was equipped and did not appreciate the extent of the danger involved in opening the valve.

In appellant's first point it is urged that the court erred in granting plaintffs' motion for judgment on the verdict and in disregarding the answers to special issues numbers 20a, 20b and 20c. In our opinion the point is well taken.

Assuming, as contended by appellees and as found by the jury, that Halepeska went to appellants' premises on the occasion in question as a business invitee, the rule is that the owner of premises is liable to an invitee only for injuries resulting from defects or conditions which are hidden and unknown. More specifically, an owner is not ordinarily liable to an invitee for failure to keep his premises safe insofar as open, obvious and known defects are concerned. Hall v. Medical Building of Houston, 151 Tex. 425, 251 S.W.2d 497; Hausman Packing Company v. Badwey, Tex.Civ.App., 147 S.W.2d 856, (Writ Ref.). It is held that when a "plaintiff has brought himself within the operation of the maxim, Volenti non fit injuria, he cannot recover". 65 C.J.S. Negligence § 174, p. 849. This.

doctrine is predicated upon the theory of knowledge and appreciation of danger and of voluntary assent thereto. To come within the doctrine it is required that the risk or danger must have been known to and appreciated by the plaintiff, or that it was so obvious that he must be taken to have known and comprehended it. 65 C.J.S. Negligence § 174, pp. 851, 852.

■ Appellee contends that volenti non fit injuria is not applicable unless the person who encountered the risk actually knew and appreciated the danger involved, and that the doctrine is not invoked by the mere showing that the injured party should have known of the danger. We cannot agree with this contention. As a general proposition the doctrine is invoked by a showing that the injured party should have known of the existence of the dangerous condition and should have appreciated the danger. This is true where the dangerous condition is open and obvious. In the case of McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391, 395, the rule is stated by our Supreme Court as follows:

"In order to fix liability on the owner it must first be established that he knew or should have known of the existence of the condition and that he should have appreciated its dangers. Once this is established either as a matter of law or by a fact finding, the inquiry then turns to what was known and appreciated, or should have been known and appreciated, by the invitee. In some cases, the existence of the condition may be so open and obvious and the dangers inherent in it so apparent that we may say as a matter of law that the invitee should have known of and appreciated them. * * * In other words, whether the condition was so open and obvious and the dangers in it so apparent that the invitee should have known of them may be fact questions."

The remaining question in this connection is whether it has been established as a fact that Dennis Halepeska should have known of and appreciated the danger involved. The jury found that he should. The dangerous condition of the equipment of the well which was found by the jury to have proximately caused the tragic accident was that the flow line was not sufficiently staked down. The jury found that Halepeska should have had knowledge of the manner in which the well was equipped which means that he should have known that the flow line was not sufficiently secured by stakes. The jury found that in the exercise of ordinary care he should have appreciated the danger of opening the valves, and that he voluntarily exposed himself to such danger. In our opinion these findings are supported by evidence.

■ The evidence shows that the well was completed as a commercial producer in 1955; that Halepeska as geologist on the job knew at the time that the well had a bottom hole pressure of 1300–1400 lbs. per square inch; that it was necessary from time to time to release such bottom hole pressure and to "flow" or "blow" or "bleed" the well. The evidence shows that the well had been "bled" about one week before the fatal accident and that Howell and Price, employees of appellant, had "bled" the well two days before the accident. Halepeska and Morris met their deaths while they were in the process of "bleeding" or "flowing" said well.

Howell had informed Halepeska of the manner in which he and Price had "flowed" the well and Halepeska told Howell that the well had not been "blown hard enough". The evidence indicates that Halepeska and Morris, at about noon on the day in question, went from Cross Plains to the well for the purpose of "bleeding" the well harder than it had been previously "bled"; that Halepeska said that the "well needed to be blowed down harder". On their way to the well Halepeska and Morris met Mr. Bryant, who was an employee of appellant, and announced that they were going to the well. A short time later Bryant heard the explosion from the Smith lease and hurried to the scene. The evidence shows that both

valves with which the well was equipped were open and supports the conclusion that they had been suddenly and fully opened. There was evidence to the effect that the safe manner of opening the valves for the purpose of "bleeding" or "blowing" a well was by a slow and gradual process and by slowly using the 2″ valve as a choke. Halepeska was a geologist and there was evidence to the effect that when acting for the company as such he was in charge and had authority to tell the employees of the company what to do. The evidence indicates that Halepeska knew the proper manner and use of the 2″ choke valve and how the well should be "bled". Halepeska had previously told other employees of appellant how to fix the well so it could be "bled" without danger.

There was evidence to the effect that in "bleeding" or "flowing" a gas well the flow line to the well should be staked with at least three stakes to the joint over its entire length; that the stakes should be driven crossways over the pipe for the purpose of holding it in place; that they should be tied with wires or chains to keep them from springing apart and that at least in one place each pipe should be tied to the stakes to prevent it from slipping back from under the stakes. The evidence indicated that the flow line on the well, consisting of two 20 feet pipes, was held in place with only one set of stakes located near the end of the flow line with a rope tied around it to hold it together.

This condition of the flow line and the manner in which it was held down and secured by only one set of stakes was not hidden. The flow line was on the ground in plain sight leading away from the well. Halepeska was aware of the high bottom hole pressure of the well. The manner of the staking under the circumstances was, as found by the jury, a dangerous condition. The manner in which it was staked was open and obvious. The evidence therefore supports the finding that Halepeska knew of the manner in which the well was equipped, that is, he knew how the flow line

was staked down. It is undisputed that he knew about the high bottom hole pressure. That was the reason for the need to "flow" or "blow" the well. Halepeska was an experienced oil man. He was a specialist and his presence at the well was for the announced purpose of exercising his special knowledge for the benefit of appellant in "blowing" or "bleeding" the gas well harder than it had been "bled" previously. Howell had explained to Halepeska how he and Price had "blowed" the well and Halepeska thought it should be "blown" harder. The evidence supports the finding that under the circumstances he should have appreciated the danger involved in so opening the valves and that he voluntarily exposed himself to such danger.

It is not material whether or not Halepeska opened the valves himself. The evidence shows that the operation in which he and Morris were engaged was under his direction. The opening of the valves in a more drastic manner than had been previously done was in keeping with his announced purpose of "bleeding" the well harder than it had been previousy "bled". Appellee's counterpoints complaining of the action of the court in refusing to submit its requested special issues inquiring whether Morris opened the valves, whether he opened them too suddenly and whether such action was negligence and a proximate cause of the accident are overruled.

The findings of the jury, in effect, that Halepeska should have had knowledge that the flow line was not sufficiently staked, that he should under the circumstances have appreciated the danger in opening the valves and that he voluntarily exposed himself to such danger are supported by evidence. Such findings required a judgment for appellant. McKee v. Patterson, supra; Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374; A. C. Burton Company v. Stasny, Tex.Civ.App., 223 S.W.2d 310, (Writ Ref.). Other points by appellant become immaterial.

The judgment is reversed and judgment is rendered for appellant.