**SAN ANTONIO PORTLAND CEMENT COMPANY, Appellant,**

v.

**Howard CHANDLER et al., Appellees.**

No. 13977.

Court of Civil Appeals of Texas.

San Antonio.

July 25, 1962.

Rehearing Denied Sept. 19, 1962.

Groce & Hebdon, Charles L. Smith, San Antonio, for appellant.

Rudy Rice, Frank R. Southers, Jack P. Kelso, San Antonio, Strasburger, Price, Kelton, Miller & Martin, William C. Martin, Jr., Dallas, for appellees.

MURRAY, Chief Justice.

This suit was instituted by Howard Chandler against San Antonio Portland Cement Company seeking to recover damages for personal injuries received on August 28, 1958, as a result of being bumped off a crane rail beam by a crane belonging to the Cement Company, while working as an iron worker for G. W. Mitchell Construction Company, an independent contractor, hereinafter called Mitchell, which was doing iron work at the Cement Company's plant. The Central Surety and Insurance Corporation filed a plea in intervention for the money and medical expenses which it had previously paid to Chandler, and the amount to which it was entitled was stipulated between the parties.

Based upon the findings of the jury, the trial court rendered judgment in favor of Chandler in the sum of $12,500.00, and the Cement Company has prosecuted this appeal.

■ The Cement Company defended this suit largely upon the theory that as Chandler was no more than an invitee on the Cement Company's premises, it owed him no duty with reference to an open and obvious danger, and, further, on the doctrine of *volenti non fit injuria* (damages suffered by consent is not a cause of action) and on the similar doctrine of assumed risk.

A full statement of the facts at this point will be helpful. On August 28, 1958, Chandler was working as an iron worker and employed by Mitchell. On that date, R. J. Grunewald, Roy Brown, Jr., and Howard Chandler, all employees of Mitchell, were working replacing some old sheeting on the side of the crane or clinker building belonging to the Cement Company and located at its plant. This building is a large rectangular structure, some 700 feet long, running north and south, and some 70 feet high. High from the floor and along the west and east walls is a large rail beam upon which is a crane track. The Cement Company had two cranes that operated on these tracks; the "Old" Crane was parked, when not in use, at the north end of the Clinker Building, and the "New" Crane was parked, when not in use, at the south end of the building. Both of these cranes worked on the same rails or tracks and could not pass each other. When the old crane was parked at the north end, the new crane could travel practically the entire length of the building, and likewise when the new crane was parked at the south end, the old crane could travel practically the entire length of the building. The cranes are made of two enormous box girders that extend from one crane rail to the other, and there are wheels on the end of the box girders that run upon the crane rails, which are laid upon the rail beams. The cranes run north and south on the crane rails. The cranes also have another set of tracks in the steel girders that allow the cranes to work east and west. There is a cab beneath the steel girders in which the operator of the crane rides while operating the crane. Chandler had, for several years, worked on and about these beams and rails and understood the danger from being struck by a crane while working on a beam or rail.

On the morning of August 27, 1958, Chandler, Grunewald and Brown, Jr., began working, putting back on the east side of the Clinker Building, the steel sheeting that had theretofore been removed for the purpose of making repairs. There were two other buildings that joined the Clinker Building on the east side. The roofs of these two buildings made a valley and above this valley were two windows in the Clinker Building. During August 27, they had replaced the siding as far as these two windows. On the morning of the

28th they had resumed placing the sheeting on the east side of the building. The ladder they were using was too short, so Chandler climbed up the ladder through the window, and standing on the crane beam assisted Grunewald in placing the sheeting on the wall. Chandler was aware of the fact that the old crane was in operation. It came by him several times that morning. He would stand up against the wall and let it pass, then go back to work. He had been warned that if the new crane was to be put into action that he would be so informed. While he was thus engaged, the old crane came by him, going north, so he stood up and let it pass, and thinking it would be some time before it would return, he squatted down to again assist Grunewald, then the new crane came by, also going north, and struck him on his right buttock, and knocked him through the window to the valley made by the roofs of the two adjoining buildings, some fifteen to eighteen feet below. Chandler was seriously injured in this fall.

There was evidence that the old crane had not been in use on that morning, only the new crane was used. The Cement Company offered evidence that both cranes could not be operated at the same time, as there was not sufficient power to do so. Appellee offered evidence that both cranes could be operated at the same time and had been observed operating at one and the same time on several occasions.

Joseph M. Ranson was called as a witness for appellant and testified that he was the master mechanic for Cement Company and was in charge of plant maintenance and plant repairs. He admitted that he knew that Chandler, Grunewald and Brown were working, putting the steel sheeting back on the east wall. Ranson testified that he met Brown, Sr., foreman for Mitchell, just after 9:00 A.M. on the morning of the 28th, and Brown told him that the crane operator had bumped one of his men off the crane rail. This was the first information Ranson had that Chandler was working standing on the crane rail.

John Pongrass was called by the Cement Company as a witness and testified that he had been operating the new crane that morning and that the old crane had not been operating, that both cranes could not be operated at the same time. He did not know that he had bumped anyone off the crane rail until someone told him at noon. The Cement Company had a custom of placing a light under the rail beam when anyone was working on the rail beam, but did not do so at this time because it had no notice that Chandler was working on the beam on the morning of August 28, 1958.

The jury, in answer to the questions submitted to them, made the following findings:

Question No. 1. John Pongrass, operator of the new crane, did not fail to keep a proper lookout.

Question No. 2. No answer required.

Question No. 3. Pongrass did not fail to have the crane under proper control.

Question No. 4. No answer required.

Question No. 5. Pongrass was not operating the crane at a high rate of speed.

Question No. 6. No answer required.

Question No. 7. The failure of Pongrass to sound the warning bell on the crane was not negligence.

Question No. 8. No answer required.

Question No. 9. Cement Company, acting through its officers, agents, or employees, knew or should have known that Chandler was working on or near the crane rail.

Question No. 10. The failure of Cement Company, acting through its agents, servants, and employees, to place a warning light outside the crane rail beam in the area where Chandler was working was negligence.

Question No. 11. Such negligence was a proximate cause of Chandler's being struck by the crane.

Question No. 12. Cement Company was negligent in not warning Chandler that the new crane was in operation.

Question No. 13. Such failure was a proximate cause of Chandler's being struck by the new crane.

Question No. 14. Chandler did not fail to keep a proper lookout for his own safety.

Question No. 15. No answer required.

Question No. 16. Chandler did not know, nor should he have known of the danger of being struck by the new crane.

Questions Nos. 17 and 18. No answer required.

Question No. 19. Mitchell, acting through its officers, agents, or employees, failed to notify the Cement Company that its employee would be working on the crane rail beam on the occasion in question.

Question No. 20. Such failure was not the sole proximate cause of the occurrence in question.

Question No. 21. The occurrence in question was not the result of an unavoidable accident.

Question No. 22. The sum of money, if paid now, which would fairly and reasonably compensate Chandler for his damages is $12,500.00.

■ Thus it will be seen that the jury found, among other things, that the Cement Company, acting through its officers, agents and employees, knew or should have known that Chandler was working on or near the crane rail on the occasion in question, and failed to warn Chandler that the new crane was in operation, and that such failure was negligence, and further that Chandler did not know of the danger of being struck by the new crane, and did not fail to keep a proper lookout. These findings would support the judgment rendered by the trial court, if they were supported by sufficient evidence. The evidence does support these findings. Chandler had been working near the same place the day before. Ranson, the master mechanic in charge of repairs and maintenance for the Cement Company, knew where Chandler was working. When Chandler went to work on the morning of August 28, 1958, the date he was injured, only the old crane was in operation and he was keeping a proper lookout for this crane. The new crane was put into operation without notice to him and he was struck by it. He knew of the danger of being struck by the old crane, but he had no notice that the new crane was in operation. He was not precluded, under such circumstances, from recovering under the doctrine of *volenti non fit injuria*. Dee v. Parish, 160 Tex. 171, 327 S.W.2d 449, on remand, Tex.Civ. App., 332 S.W.2d 764; Fisher Construction Co. v. Riggs, 160 Tex. 23, 325 S.W.2d 126, on remand, Tex.Civ.App., 326 S.W.2d 915; Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60; McAfee v. Travis Gas Corporation, 137 Tex. 314, 153 S.W.2d 442; Hobbs v. Grant, Tex.Civ.App., 314 S.W.2d 351; Halliburton Oil Well Cementing Co. v. Groves, Tex.Civ.App., 308 S.W.2d 919; Else v. Hawks, Tex.Civ. App., 284 S.W.2d 413.

In Sinclair Refining Company v. Winder, Tex.Civ.App., 340 S.W.2d 503, the Court said:

"We have a situation in which both parties knew and appreciated the dangerous condition, but in which there is a question of fact as to whether the invitee 'of his own free will and as a result of intelligent choice', voluntarily exposed himself thereto. This issue was omitted without request or objection. There was evidence to support a finding thereon favorable to appellee. Under Rule 279, Texas Rules of Civil Procedure, it is deemed as found in support of the judgment. Dee v. Parish, [160] Tex.Sup. [171,] 327 S.W. 2d 449, 452."

Appellant relies strongly upon McKee, General Contractor, Inc. v. Patterson, 153

Tex. 517, 271 S.W.2d 391. The Supreme Court held that where a general contractor for the construction of a gymnasium allowed the gymnasium floor to be finished before the overhead carpentry work was completed, and the subcontractor's employee knew of the slick condition of the floor and fully appreciated the danger of resting a ladder upon the polished floor while engaged in overhead carpentry work, the employee voluntarily exposed himself to the risk, even though it was necessary for the performance of his duties, and under such circumstances the general contractor breached no duty owed to the subcontractor's employee, and therefore such subcontractor's employee could not recover. We readily agree to the correctness of this holding, and if in the case at bar Chandler had been struck by the old crane, which Chandler knew was in operation, he would not be permitted to recover because he knew the danger of being struck by this crane, but as he was struck by the new crane, which he had no notice of its being in operation, a different situation is presented.

 By appellant's tenth point of error it presents the contention that the trial court erred in not submitting its requested issues concerning Chandler's failure to notify the crane operator or agent or employee of the Cement Company on August 28, 1958, that he would be working on the crane rail. There was evidence raising the question of the contributory negligence of Chandler in not notifying the crane operator, or some other agent or employee of the Cement Company, that he would be working on the crane rail or beam on the morning he was injured.

It is true that the jury found, in answer to Question No. 9, that the Cement Company, acting through its officers, agents, or employees, knew or should have known that Chandler was working on or near the crane rail on the occasion in question, but we must view the record at the time the requested issues were presented to the court. At that time the jury had not answered any

of the issues, the Cement Company had plead the contributory negligence of Chandler and was entitled to have its affirmative defense submitted to the jury. The issues requested were substantially correct, and the court committed reversible error in not submitting them.

The judgment of the trial court will be reversed and the cause remanded for a new trial.

BARROW, J., not participating.