Mrs. Rita M. SULLIVAN et al., Appellants,

v.

**LYDICK ROOFING COMPANY OF HOUSTON, Inc., Appellee.**

No. 7530.

Court of Civil Appeals of Texas.

Texarkana.

April 7, 1964.

Rehearing Denied May 5, 1964.

**420**

Helm, Jones & Pletcher, Houston, Reid, Strickland, Gillette & Ramsey, Baytown, Mabel Grey Howell, Houston, for appellants.

Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellee.

CHADICK, Chief Justice.

This is a common law tort action. The judgment of the trial court is affirmed.

United States Industrial Chemical Company contracted with M. W. Kellogg Company for the erection of a polyethylene plant in Harris County. Roofing a structure called the extruder building was subcontracted to Lydick Roofing Company of Houston, Inc. As construction progressed, Jack A. Sullivan, a field engineer employee of M. W. Kellogg Company, was instructed to make an inspection of steel work at the first platform above a silo structure. While ascending a series of ladders to reach the inspection point Mr. Sullivan stepped from the ladder to the roof of the extruder building. The roofing material under foot gave way, and he plunged to his death 24 feet below.

Mrs. Rita M. Sullivan, the surviving wife of Jack A. Sullivan, for herself and as Guardian of two minor children, together with the Guardians of the two minor children's estates, brought suit against Lydick Roofing Company of Houston, Inc., to recover damages accruing to them as the result of Jack A. Sullivan's death. The Traveler's Insurance Company intervened as a plaintiff. The plaintiff's pleadings and proof cast the Lydick Roofing Company of Houston, Inc., in the role of an occupier of premises, that is, the structure being roofed, and the deceased as an invitee thereon. Based on jury findings a take nothing judgment was entered in the trial court.

The plaintiffs undertook to prove that the defendant Lydick owed the decedent a duty to take reasonable precautions to warn or protect him from a condition of the extruder building roof constituting an unreasonable risk of harm. Issues were requested and submitted to determine the pertinent facts. In the plaintiffs' series was an issue (Spec. Is. #2) by which plaintiffs proposed to establish as a fact that at the time the decedent stepped upon the roof he was unaware it would not support the weight of

a man. The jury answered, "We do not". Defensively Lydick Roofing Company of Houston, Inc., secured the submission of an issue (Sp. I. 13) reading as follows:

"Do you find from a preponderance of the evidence that Jack A. Sullivan, before his fall, knew or had been informed that the roof in question would not support the weight of a man?"

The jury answered:

"We do."

To avoid lengthy and repetitious quotation, at this point reference is made to the opinion of the Supreme Court in Halepeska v. Callihan Interests, Inc., Tex., 371 S.W.2d 368, and the expressions it contains relative to the duty owed to an invitee by an occupier of land or premises; and the operation and scope of the "no duty" doctrine in a suit for damages by an invitee. The case (371 S.W.2d at p. 378) holds that an occupier (Lydick) is under no duty to warn an invitee (Sullivan) of a dangerous condition of the premises that is known to the invitee. On the same authority (371 S.W. 2d at p. 380) it must be held that if the plaintiffs failed to establish Lydick Roofing Company of Houston, Inc., owed the decedent a duty to warn, etc., the plaintiffs did not prove an actionable case in the trial court.

■ The principal question arising from the findings mentioned (Special Issue #2 and Special Issue #13), is whether or not either amounts to a finding the decedent knew that the roofing would not support his weight and that such intelligence constituted, as a matter of law, knowledge of the danger that would be encountered by stepping, as the decedent did, onto the roof. On the basis of the authorities next cited it is concluded that the decedent's possession of the fact or facts found is equal to and charges the decedent as a matter of law with knowledge of the danger. Marshall v. San Jacinto Building, Inc., Tex.Civ.App., 67 S.W.2d 372, W.R.; Hausman Packing Co. v. Badwey, Tex.Civ.App., 147 S.W.2d 856; Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374; A. C. Burton Co. Inc., v. Stasny, Tex.Civ.App., 223 S.W. 2d 310, W.R.; McKee, General Contractor, Inc., v. Patterson, 153 Tex. 517, 271 S.W. 2d 391; Halepeska v. Callahan Interests, Inc., supra.

The appellants say the jury's answers to special issues just discussed have no effect. The argument is that the answer to special issue No. 2 is the product of a failure of proof, and does not establish the converse of the question asked. Special Issue No. 13 is arraigned as being a disjunctive submission of two inconsistent issues having the effect of and constituting only an effort to determine whether or not in the exercise of ordinary care the decedent 'knew or should have known' the roof would not support a man's weight. Based upon this postulate of the nature of the issue appellants dismiss the finding by pointing out that whether the decedent in the exercise of ordinary care, 'knew or should have known' the roof would not support a man's weight is not an ultimate issue for jury determination in a 'no duty' case. (371 S. W.2d 383–384.)

■■ Without deciding the question, it may be granted the appellants' argument destroys special issue No. 2 as a basis of judgment. However, the validity of the challenge to special issue #13 can not be conceded. This last issue was submitted without objection to its form and must be regarded now as having the approval of the appellants. Rule 372(a). Whether the decedent 'knew' and whether the decedent was 'informed' are not inconsistent inquiries of the type contemplated by Rule 277. Answer to the issue submitted must be given effect. When two or more issues are combined into a single issue, as is the case here, in the absence of timely objection to the defect, the answer has the same effect as though the issues were separately submitted. Duff v. Roeser & Pendleton, Tex.Civ. App., 96 S.W.2d 682, N.W.H.

As additional grounds for reversal the appellants urge that the jury findings just discussed are contrary to the great weight and preponderance of the evidence. The whole body of the evidence bearing upon the issue cannot be briefly detailed, but the substantial essence and quality of the proof is suggested in the following summary of the principal testimony.

Through correspondence courses and training on the job Mr. Sullivan became a practical engineer, and for five or six years before his death had been employed by the M. W. Kellogg Company and classified as a "field" engineer. In this employment his principal duties consisted of running foundation levels and maintaining the plumb of steel structures under construction. This at times necessitated running roof lines, levels, etc. He had no duties associated with the actual construction of a roof except as plumb and level might figure in it. The record is silent as to performance of a duty of this nature on the roof of the extruder building from which he fell to his death.

The roofing material that collapsed under him is known in the building industry as transite; it is of asbestos composition, manufactured in quarter inch thick boards, and described as being a slate color, or gray, the color of a concrete roof, and having a heavy substantial appearance. Use of the material in industrial plant construction is limited, and a person of long experience in the industry would not necessarily be familiar with it. Mr. Sullivan had been employed at one site where roofing of this material was applied, but no evidence was offered that he saw or had any experience with it prior to construction of the extruder building. A fellow engineer testified that he and Mr. Sullivan had walked across roofs of the same material, at the present job site, and in the same state of construction as that of the extruder building at the time of this accident. At such stage in construction a person moving over the roof stepped upon the 'angles', or steel beams, supporting the transite, if plank walkways were not provided. The associate field engineer who ascended the ladder just ahead of the decedent at the time of the fatal mishap testified that on another occasion he and Mr. Sullivan walked five to ten feet out upon the roof of the extruder building by stepping upon the steel members of the roof, and Mr. Sullivan cautioned him not to put his weight on the transite slabs because he would fall through if he did so. On cross examination this witness acknowledged that on this particular occasion the entire roof was covered with tar paper and wire mesh in preparation for the pouring of gypsum which was in progress at the time.

■■ Considering and weighing all the evidence, as this court must do under the provisions of Rules 451, 453, and 455, Vernon's Texas Rules of Civil Procedure, and the Constitution of the State, (In re King's Estate, 150 Tex. 662, 244 S.W.2d 660), it cannot be held that the overwhelming weight and preponderance of the evidence is contrary to the jury verdict upon these issues.

Jury misconduct is the subject of another point of error. The testimony of five jurors produced on motion for rehearing disagreed in detail, though they were broadly in agreement. One juror had been excused, leaving eleven to determine the issues. The jury initially divided eleven to eight upon special issues #2 and #13. These two issues were by-passed until answers to the other issues had been agreed upon, with the exception, perhaps, of the damage issue; as to it the evidence is conflicting. The implications of the trial court action is that he found the facts to be substantially as revealed by the testimony next quoted. One of the lady jurors was elected foreman. In her testimony the foreman said:

"* * * I told them we should answer according to the evidence and that in my opinion I didn't think it made any difference either way in these particular questions, that I thought she would get some money anyway."

Another lady juror, one of three hold-outs at the time of the foreman's statement, was tendered as a witness by the appellants. Her cross examination testimony, in part, is as follows:

"Q. And do you recall how the Jury stood with reference to the answers to No. 2 and 13? What was the numerical split?

"A. There were three of us that were rather undecided, and then the rest had decided as it is now.

"Q. Were you one of the three Jurors who felt that Mr. Sullivan did not know that the roof wouldn't support him?

"A. Yes.

"Q. Did you all take few or many ballots with reference to those two questions?

"A. There were many.

"Q. Did the Forewoman make any statement after you had taken many ballots on those two questions on what effect the answers to those two questions would be?

"A. Yes. She said it wouldn't make any difference.

"Q. That it wouldn't make any difference how they were answered?

"A. That is right.

"Q. Following her remark, did you and the other two Jurors switch your vote on over then?

"A. Yes.

"Q. There was no disagreement with her once she had made that statement that it didn't make any difference, was there?

"A. I think we had some discussion, but I couldn't tell you for sure.

"Q. All right. After Mrs. Ray had made the remark that it made no difference how those two questions were answered, did you take another vote, then, to see whether or not the three of you would change your vote?

"A. Yes.

"Q. And did you change your vote then?

"A. Not right off the bat. We discussed it further. I think we had several votes after that.

"Q. All right.

"A. It is kind of hard to remember.

"Q. Do you recall whether she made that remark on one or more than one occasion?

"A. I couldn't say."

The question presented is whether the foreman's statement had the probable result of causing injury to the appellants by inducing the three hold-out jurors to agree to a verdict on the two issues heretofore discussed. Adrift in this poorly charted region of the law, the solution by the trial court can scarcely go unchallenged. The Supreme Court divided five to four on a very similar question presented in Trousdale v. Texas & New Orleans Railroad Co., 154 Tex. 231, 276 S.W.2d 242. As Rule 327, the Trousdale case and other authorities, such as Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, and Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62 are understood, the burden is on the appellants to show injury.

The jury eventually rendered a verdict adverse to the appellants on the two issues in question. From that action alone it may be reasoned the appellants were injured. On the other hand, when the record as a whole is considered, such conclusion is not inescapable or even more probable than the converse. Before the statement was made the jurors had disagreed, but in-

flexible positions had not been taken. Willingness to pass to other issues is an indication that each juror considered the final determination of the facts of these two issues as open to further discussion. Failure to advert to the foreman's errant opinion in the discussion preceding the several ballots on the issues reasonably indicates the jurors did not consider or treat the relevant evidence and the answers to these two issues as of no importance or consider the foreman's statement as relieving them of the obligations to find the true facts. The discussion and ballots show that a reevaluation of evidence, credibility of witnesses and other proper considerations more probably formed the foundation for a final answer. The facts proved and the legitimate inferences and deductions therefrom are in an area in which the trial judge's discretion operates, and his judgment upon the misconduct issue should not be disturbed.

The conclusions reached by this court make it unnecessary to discuss other points of error. The judgment of the trial court is affirmed.

FANNIN, J., concurs.

DAVIS, Justice (dissenting).

I dissent. I can not agree that Jack A. Sullivan was an "invitee". If he was, he was a "business invitee". I think that he was an "employee". I do not think that the case by the Texas Supreme Court of Halepeska v. Callahan Interests, Inc., Tex., 371 S.W.2d 361, is directly in point. I am of the opinion that the decision in this case is in direct conflict therewith.

It has always seemed to me that if there is a doubt in the minds of Judges as to whether or not there was jury misconduct, then there was definitely jury misconduct. I can not agree that the question of jury misconduct can be "speculated" upon. I disagree with the holding of the Supreme Court of Texas in Trousdale v. Texas & New Orleans Railroad Co., 154 Tex. 231, 276 S.W.2d 242. In the dissent, four of the five Judges said there was jury misconduct. I can readily see where the plaintiff in this case proved injuries because of the jury misconduct. Reading the quoted portions in the testimony cited in the opinion, it can readily be seen.

I would reverse the judgment of the trial court.