**WESTERN AUTO SUPPLY COMPANY,**
Petitioner,

v.

**J. E. CAMPBELL, Respondent.**

No. A–9659.

Supreme Court of Texas.

Dec. 11, 1963.

Rehearing Denied Jan. 22, 1964.

Cantey, Hanger, Gooch, Cravens & Scarborough, Sloan B. Blair and David O. Belew, Jr., of the firm, Ft. Worth, for petitioner.

Crumley & Hooper, R. E. Rouer, Ft. Worth, for respondent.

GREENHILL, Justice.

The plaintiff, J. E. Campbell, slipped and fell in a Western Auto store in Fort Worth. Among other things, the jury found that Western Auto was negligent in permitting a portion of its floor to be wet or covered with a foreign substance and that this was a proximate cause of Campbell's injury. It also found that Campbell had been warned of the condition of the floor and that Campbell failed to heed the warning. The jury found that it was not negligence for Campbell to fail to heed the warning of the condition of the floor and that the danger was not open and obvious. The

plaintiff's motion for judgment on the verdict was granted, and the judgment for plaintiff was affirmed by the Fort Worth Court of Civil Appeals. Tex.Civ.App., 367 S.W.2d 398. The main question before this Court is the legal effect of the jury's finding that the plaintiff was warned of the danger created by the condition of defendant's floor.

It will be here assumed that the floor was in a dangerous condition. While there is a serious doubt that there is any evidence that it had been mopped with anything other than water, it will be assumed that the floor was slippery, and that plaintiff, a business invitee, fell because of the slippery condition of the floor.

■ It has been held in this state that the occupier of premises owes a duty to use ordinary care to keep his premises in a reasonably safe condition for his invitees or to warn. If there are dangers which are not open and obvious, he is under a duty to take such precautions as a reasonably prudent person would take to protect his invitees therefrom or to warn them thereof. Halepeska v. Callihan Interests, Inc., Tex., 371 S.W.2d 368 (1963). The rule has been stated negatively: if the plaintiff knows of the condition and appreciates the danger thereof, the occupier owes no duty to the invitee to warn him of the danger. McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391, 394 (1954).

■ This Court has at least twice cited with approval Section 343 of the Restatement of Torts.[1] As applicable here that section provides:

"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereof if, but only if, he

"(a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and

"*    *    *

"(c) invites or permits them to enter or remain upon the land without exercising reasonable care

"(i) to make the condition reasonably safe, or
"(ii) to give a warning adequate to enable them to avoid the harm.
*    *    *"

With these principles in mind, we will review the facts as to the warning. Only three witnesses testified in this regard: W. E. Bennett, the manager of the store; John Samuel Post, the salesman who waited upon the plaintiff; and J. E. Campbell, the plaintiff. Johnny Riojas who had mopped the floor was unavailable to testify, apparently because of his being in the Navy.

The store manager, Bennett, described the sales area of the store as approximately 140 feet deep and 40 feet wide. It had a wide center aisle and smaller side aisles, running north and south. Merchandise hung on the walls. Between the aisles were counters, called profiteers, about 10 feet in length, on which merchandise was displayed. Some of the merchandise, such as tires and television sets, was on the floor.

Bennett described the lighting. No argument is here made that the lighting was inadequate. He described the floor as light-colored asphalt tile. Bennett said that one of the employees, Riojas, had several duties including that of mopping and waxing the floors. The floors were waxed about once a month after store hours; but to prepare for the waxing, they were

1. Section 343, Restatement of Torts is cited with approval in Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R. 2d 853 (1950); Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374, 376 (1948).

damp mopped during store hours. When this mopping was done, they usually roped off the damp area with a cord and warned customers. The area was not roped off on this occasion, but no issue was given or requested as to whether this failure constituted negligence.

On the day of the accident, Bennett testified that he instructed Riojas to damp mop the floor. Bennett was out of the store when Riojas did the mopping and when the plaintiff Campbell fell. So he could not testify as to either event.

The plaintiff Campbell testified that he entered the store to purchase four items, three of which were located toward the front of the store and one toward the back. He entered the store through its front entrance at the south end and walked some 25 feet down the center aisle into the store where he was met by a salesman [Post]. He had been in the store before. He asked for and was handed the three items from the front of the store and " * * * we put the other stuff on the counter, and he [Post] said, 'Follow me,' to get the light to put in the cigarette lighter." They proceeded to the northeast portion of the store. Campbell said he looked at the aisle and it appeared to be clear.

They got to the counter where the desired emergency light was, and Campbell selected the one he wanted. In returning to the front of the store to look at other merchandise, Campbell slipped and fell. He said he fell near the front end of the counter toward the front of the building. Asked if he heard the salesman Post warn him of the condition of the floor, Campbell said, "No, sir, he did not say it to me, or I did not hear him. * * * And I think I would if he had said it."

After his fall, Campbell said that he was helped up and was requested to go next door to a doctor to be examined. But he refused because he did not think he was hurt and was embarrassed because

of the dirty clothes he had on. So he paid for the merchandise and left the store.

The salesman Post testified that upon meeting Campbell in the store, he asked what items he wanted. " * * * and then I cautioned him about the condition of the floor because the floor was being scrubbed * * * and it was damp in this particular section where I was going for the merchandise." It was dry in the area where Campbell and Post first met. Post testified that because there was a danger of a person slipping, and because he knew it was dangerous, he told Campbell that the floor was wet and to be careful. He said the film on the floor would be difficult to see, and for that reason "we cautioned people when they came in the store about the fact that the floor was damp in that area."

As to whether the plaintiff heard him, Post testified that "I looked right at him and told him the floor was being scrubbed," and "I know I informed the man about the condition of the floor." Post heard Campbell when Campbell told Post what he wanted. Campbell did not reply to Post when he was told to be careful, that the floor was wet. There was no evidence that Campbell had any hearing defect or that there were any distracting noises or sounds to prevent Campbell from hearing Post.

Plaintiff's counsel introduced a previously given statement in which Post had said, "I was walking in front of him, I turned around and said the floor is being scrubbed, so be careful. Then I heard him slip. * * *" Post did not remember having made the statement, but it was introduced in evidence. On the trial, Post testified that while he did not tell Campbell to stay where he was, neither did he tell Campbell to follow him back where the merchandise was. When Post went to get the merchandise, he did not watch Campbell follow him, but he heard him fall. It was Post's recollection that Camp-

bell fell on the way to get the merchandise.

As stated, the jury after having heard this evidence, found that Campbell was warned of the condition of the floor; and there is evidence to support this finding.

A number of courts in other states have passed upon relatively similar fact situations where a warning has been given. In Murray v. Ralph D'Oench Co., 347 Mo. 365, 147 S.W.2d 623 (1941), the lady plaintiff went to the defendant beauty parlor as it opened in the morning. A janitor had just mopped the floor. The beauty operator discovered a "spot" on the floor. She put some Dutch Cleanser on it and told the janitor to stop mopping and clean the spot. The janitor went out to wring his mop, and he told the plaintiff as she came in to "take it easy and look out, it is wet." The operator told the plaintiff as she arrived that they were cleaning a spot, and pointed it out to her. The plaintiff got safely to her chair in the parlor, but slipped when she came back to make a telephone call. She contended that the slippery area was larger than that which had been pointed out to her. It was held that an instructed verdict should have been granted for the defendant. The court reasoned that the occupier is not an insurer of the plaintiff's safety and that the basis of liability is the superior knowledge of the occupier of the unsafe condition; and that when the plaintiff knows of the condition or is told of it, there is no liability.

This Murray case represents a line of "no duty" cases. Dean Keeton treats them under "the Restatement Position."[2] He observes that notwithstanding some dissatisfaction with the doctrine, "it must be admitted that there is abundant authority for the proposition that the true ground upon which the occupier's liability for personal injuries arising from dangerous conditions on land rests is his superior knowledge of the dangers thereon."[3]

Another reasoning reaching the same result is found in Bohlen, Studies in the Law of Torts (1926). Bohlen states:

"The owner's duty rises no higher than that of making the appearance conform to the reality, of making the condition as good as it looks, or of bringing to the knowledge of the visitor that it is as bad as it is. The visitor, having no right to enter the premises, is not entitled to find it safe for his visit; he is only entitled to know its real condition so that he may intelligently make up his mind to accept or reject the owner's permission to enter it." Bohlen, supra, page 183. Cf. Harvey v. Seale, Tex., 362 S.W. 2d 310, 312–313 (1962).

Another line of reasoning is illustrated in Baker v. Clark, (1958) 233 S.C. 20, 103 S.E.2d 395. There, the plaintiff, accompanied by her daughter, entered defendant's department store to use the rest room. She was considered an invitee. The store had just opened, and the floors had been mopped with a cleaning fluid. The hardwood floors were new and freshly polished. The plaintiff testified that a saleslady had told her to be careful, that the floors had been "shellacked" but were dry. Her daughter said the saleslady told them that they had just finished waxing the floor and to be careful. Another witness said the warning was that they had just cleaned the floor and to be very careful. The plaintiff slipped and was injured. The trial court instructed a verdict for defendant, and that judgment was affirmed. The court rested its decision on two grounds: the proprietor owed a duty to exercise reasonable care to give warning of hidden dangers or unsafe conditions of which the proprietor knew or should have known in the exercise of reasonable supervision and

2. Page Keeton, "Personal Injuries Resulting from Open and Obvious Condition," 100 U. of Penn.L.Rev. 629, 633 (1952).

3. Page Keeton, "Assumption of Risk and the Landowner," 22 Louisiana L.Rev. 108, 116 (1961).

inspection; and this warning was given. It held further that since plaintiff was warned, she assumed the risk; that she impliedly agreed to look out for herself. [Citing Restatement of Torts, § 893; Prosser, Torts, 303–314 (2d ed.) 1955]. To the same effect is Hogan v. Metropolitan Building Co., 120 Wash. 82, 206 P. 959 (1922), where a shoe store salesman warned a customer, wearing newly purchased shoes, that there was a decline or step-down in the sidewalk just outside the door of the store.

Other courts simply treat the giving of an adequate warning as negating any negligence on defendant's part as a matter of law. Hordes v. Kessner, 159 N.Y.S. 891 (App.Div., Sup.Ct., 1916); Sadler v. Lynch, 192 Va. 344, 64 S.E.2d 664 (1951).

The Restatement view is criticized by some writers including Harper and James.[4] They would treat the subject purely on the basis of negligence and contributory negligence rather than on "no duty." In treating the ordinary warning cases, those authors state that a warning may, as a matter of fact, suffice to remove the danger, "as where a customer, not hurried by crowds or some emergency, and in possession of his faculties, is told to 'watch his step' or 'step up' at the appropriate time. When this is the case, the warning satisfies the requirement of due care and is incompatible with defendant's negligence. Here again, plaintiff's recovery would be prevented by that fact no matter how careful he was." [5]

■ These and other views were before this Court in McKee v. Patterson and in the recent Halepeska decision.[6] But because neither of those cases involved the giving of a warning, we have, in this case, re-examined the authorities where a warning has been given. We adhere to the "no duty" rule as announced in the Halepeska decision: if there are dangers which are not open and obvious, the occupier is under a duty to take such precautions as a reasonable prudent person would take to protect his invitees therefrom or to warn them thereof. 371 S. W.2d 368, 378 and 380.

As a general rule under that doctrine, when such a warning is given, the occupier has discharged his duty. As stated in the Halepeska opinion, " * * * if the occupier owes the plaintiff no duty, that is all that need be found to defeat plaintiff's recovery." Similarly, where there is a duty, and that duty is discharged by giving warning, the recovery by the plaintiff is defeated; and the finding that plaintiff was not contributorily negligent becomes immaterial. A case directly in point is Capobianco v. Yacovelli Restaurant, Inc., 360 S.W.2d 302 (Mo.App., 1962). There, an air conditioner repairman, an invitee, was warned not to stand on the wooden cover of a stairwell leading into a cellar. He did stand on it, it broke, and he fell into the cellar. He contended that he was not contributorily negligent, and the jury so found. A judgment in his favor was reversed. The occupier owed him the duty to keep his premises safe or to warn of dangerous conditions. The asserted basis of the occupier's liability there was his superior knowledge of unreasonable risk of harm. It was held that the defendant breached no duty to the plaintiff, which established "no negligence" on defendant's part. Therefore the contributory negligence finding was held to be immaterial.

---

4. James, "Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees," 63 Yale L.J. 604, 628 (1954); 2 Harper & James, The Law of Torts, 1494 (1956).

5. Harper & James, The Law of Torts, (1956) at 1492. The text continues to give illustrations of fact situations in

which the authors consider that a warning would not satisfy defendant's duty such as icy stairs, walks near high tension wires, and a slippery floor.

6. McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954); Halepeska v. Callihan Interests, Inc., Tex., 371 S.W.2d 368 (1963).

That the giving of warning discharges the occupier's duty in Texas was recognized by the Fifth Circuit in Gulf Oil Corporation v. Bivins, 276 F.2d 753 (1960). There the plaintiff who was injured was never personally warned by anyone. A warning of the dangerous condition had been given by Gulf to the plaintiff's employer (an independent contractor) and to plaintiff's foreman. It was held that Gulf's only duty was to warn the plaintiff's employer. A judgment for the plaintiff against Gulf was reversed and rendered. The dissent by Judge Brown was not that an adequate warning would not discharge the defendant. His view was that it was wrong to deprive the plaintiff of a recovery because *his employer* had been warned where the plaintiff himself had not been warned. Such a case is not before us.

■ Plaintiff argues that to defeat plaintiff's recovery the warning must be heard, understood, and comprehended. In several cases the adequacy of the warning has been left to the jury. See, for example, Gulf Production Co. v. Adams, 49 S.W. 2d 889 (Tex.Civ.App., 1932, writ refused), where there were loud noises to explain plaintiff's failure to hear the warning; Harris v. Simon, 32 S.C. 593, 10 S.E. 1076 (1890), where warning of a dynamite blast was given in a low voice from down in a mine. To the same effect is Beauchamp v. Saginaw Mining Co., 50 Mich. 163, 15 N.W. 65 (1883). Other situations could be conceived, such as where the plaintiff was deaf, mentally deficient, was an infant, or did not understand the English language. We express no opinion as to those situations.

Here, however, Campbell was not shown to have any deficiencies. The warning given was of the precise danger which was to be anticipated and which caused the injury. There was no emergency. There was no evidence of any noise or distraction to keep plaintiff from hearing the warning. The plaintiff Campbell and the salesman had no difficulty in hearing or understanding each other in any other respect

The special issue given to the jury was not simply whether the salesman spoke words but whether the salesman *warned* Campbell. The word "warn" is a transitive verb taking an object; i. e., a warning was given to Campbell, and not simply uttered by the salesman. There was no objection by either party to the issue as submitted. Since the issue, "Did defendant's salesman warn Campbell of the condition?" was submitted by the court to the jury, it was incumbent upon plaintiff to have requested issues to negative the adequacy of the warning, if this was his position.

Plaintiff's counsel did request an issue as to whether Campbell heard the statement of the salesman. The trial court refused to submit the issue, and that action was not preserved as error by plaintiff. Moreover, the request for the submission of that issue was made conditional upon the submission of an issue as to whether Campbell was told by defendant's salesman of the condition of the floor in defendant's store. The trial court submitted an issue more onerous to defendant: that is, to obtain a favorable finding under the issue as submitted, defendant had to convince the jury not only that the words were spoken but that a warning was given to Campbell. We hold that the jury finding that the salesman warned Campbell of the condition is controlling in this case. Rule 279, Texas Rules of Civil Procedure.

The judgments of the courts below are reversed, and judgment is here rendered for Petitioner.