Emmett O. COLEMAN, Appellant,

v.

**HUDSON GAS AND OIL CORPORATION,**
Appellee.

No. 6741.

Court of Civil Appeals of Texas.

Beaumont.

March 17, 1966.

Rehearing Denied May 11, 1966.

Waldman & Smallwood, Beaumont, for appellant.

Barnes & Barnes, Keith, Mehaffy & Weber, Beaumont, for appellee.

STEPHENSON, Justice.

This is an action for damages for personal injuries sustained by plaintiff. Trial was by jury and an instructed verdict was granted by the trial court for defendant at the close of plaintiff's case. Judgment was rendered that plaintiff and intervenor take nothing. The parties will be referred to here as they were in the trial court.

Plaintiff was injured while in the course of his employment with Banister Construction Company, hereinafter called "Banister", and was paid workmen's compensation benefits. The insurance carrier for Banister Construction Company intervened in this cause. Defendant, Hudson Gas & Oil Corporation, had contracted with Banister Construction Company, an oilfield repair outfit, to do some maintenance and repair work on a high pressure gas system located on defendant's leasehold. Plaintiff was injured when the unit he was repairing blew out.

This case is similar to the case of Halepeska v. Callihan Interests, Inc., (Tex.) 371 S.W.2d 368, in that it involves questions of "no duty", "volenti" and "negligence and contributory negligence".

■ The law is clear that an employee of an independent contractor is a "business invitee", and that defendant in this case was required to keep the premises upon which this incident occurred in a reasonably safe condition for plaintiff. This included a duty on the part of defendant to inspect and discover dangerous conditions. Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853, Genell, Inc. v. Glynn, 163 Tex. 632, 358 S.W.2d 543.

■ Defendant's duty in this case was to protect plaintiff from dangers of which defendant knew, or (because of its duty to inspect) of which defendant should have known in the exercise of ordinary care. If there were dangers which were not open and obvious, defendant was under a duty to take such precautions as a reasonably prudent person would take to protect plaintiff from such danger or to warn plaintiff of such danger. If the danger was open and obvious, and the plaintiff knew of such danger or was charged with knowledge of such danger, then defendant owed plaintiff "no duty" either to protect plaintiff from such danger or to warn plaintiff of such danger. This is so, the cases say, because there is "no duty" to warn a person of things he already knows, or of dangerous conditions or activities which are so open and obvious that as a matter of law he will be charged with knowledge and appreciation thereof. Plaintiff had the burden in this case of proving not only that he was injured as a proximate result of encountering a condition on the premises involving an unreasonable risk of harm, but plaintiff also had to prove that defendant owed him a duty to take reasonable precautions to warn him or protect him from such danger; i. e., plaintiff had to negative "no duty". Halepeska v. Callihan Interests, Inc., supra.

Plaintiff made the following allegations in this case:

"4.

"Plaintiff would further show that the said Thornhill Carver adjustable choke blew out from the said low-temperature extracting unit in question, in the manner alleged in the foregoing paragraph, as the result of an accumulation of gas trapped in one of the lines of said unit. That this accumulated gas had been trapped as the result of the freezing up of the lines in question due to a sudden drop or decrease in gas pressure.

"Plaintiff would further show that the accumulated gas which caused the said adjustable choke to blow out, as aforesaid, had been trapped in the line of said extracting unit as the result of the failure of defendant, through its agents, servants or employees acting in the course and scope of their employment, to inspect

the line in question, and the bleeder valve attached thereto for presence of frost thereon and/or therein; and/or an accumulation of gas, and/or to remove the frost from said line and/or from the said bleeder valve, by allowing more time to bleed the said line and/or the bleeder valve or by pouring hot water over the said line and/or the said valve, before turning said low-temperature extracting unit over to the employees of Bannister Construction Company, such as plaintiff. Plaintiff would show that defendant, through its agents, servants or employees, acting in the course and scope of their employment, failed to warn the employees of Bannister Construction Company, such as plaintiff, that they had not inspected the line in question and/or the bleeder valve attached thereto, for the presence of frost, and that the frost had not been removed from said line and/or the bleeder valve, in the manner hereinbefore described. That there was an accumulation of trapped gas in the line in question, which was known to defendant, its agents, servants, or employees, due to the fact that it had had exclusive control of the low temperature extracting unit in question prior to February 16, 1959; but which was not known to the employees of Bannister Construction Company, such as plaintiff, who had started working on said unit just a few hours before plaintiff's accident. That the trapped gas in the said lines of the low-temperature extracting unit, the accumulation of which caused the adjustable choke to blow out, thus constituted a hidden danger as to the employees of Bannister Construction Company, such as plaintiff, of which defendant, who knew of said danger, had a duty to warn said employees of Bannister Construction Company, such as plaintiff."

"6.

"Plaintiff would further show that the blowing out of the Thornhill Carver adjustable choke on the low temperature extracting unit in question, as set out above, and the resulting injuries to plaintiff, to be hereinafter described, were proximately caused by the negligence and carelessness of the defendant, Hudson Gas & Oil Corporation, through its agents, servants, or employees, acting in the course and scope of their employment, in the following particulars:

a. In failing to warn plaintiff that the line in question had frozen up, causing gas to be trapped and accumulated therein;

b. In failing to inspect said lines to determine whether it was free of frost and/or gas before turning said extracting unit over to the employees of Bannister Construction Company, and particularly plaintiff;

c. In failing to (properly) bleed the line in question by allowing more time to bleed the line and/or the bleeder valve attached thereto, and by pouring hot water on the line and/or bleeder valve attached thereto;

d. In failing to install and maintain a bleeder plug to relieve the gas pressure from the line in question;

e. In failing to install a pressure gauge on the line in question, which would register the amount of gas pressure in said lines;

f. In allowing plaintiff to work on the low-temperature extracting unit without providing for his safety by bleeding the said line in the amanner set out in 6c herein.

"That each and all of the foregoing acts and omissions, were negligence and carelessness, and each and all were a proximate cause of the injuries and damages of which plaintiff complains."

■ This being an instructed verdict case, we must view the evidence in its most favorable light to the plaintiff. Plaintiff

testified: He had been working for Banister about one month when he was injured; he was injured the first day he worked on this particular job; he had never worked around nor seen one of these units before; the explosion occurred when Morris, plaintiff's foreman, struck the gas line behind the choke, with a sledge hammer, in order to loosen the choke; Morris was instructed to strike the line by Sharp, defendant's gauger or switchman; Sharp supervised the entire job and what he wanted done; they were told by Sharp that the gas line had been bled and to go ahead with the job; Sharp did not tell them there was any gas pressure or give them any warning.

Zumwalt, defendant's assistant superintendent, testified as follows:

"Q. All right, sir, now then, the most probable explanation, then, in your mind, would be that the gas would have to be trapped somewhere along the line for it to blow that choke out?

"A. My thought was that the choke was closed and the gas was in behind it, and it was never opened up and bled down, and it blowed out.

"Q. It was never opened up and bled down?

"A. That's right.

"Q. So that if it wasn't bled down, that would explain the presence of the gas there and the reason it blew out?

"A. That's right."

"Q. All right, sir. Assuming that this thing blew out, though, with such force that it knocked this man back and caused fractures in his face, that would probably have been caused by some trapped gas pressure in the lines or in the adjustable choke, would it not?

"A. I would say it probably would be caused by trapped gas."

J. F. Banister, plaintiff's employer, testified by written deposition to the following:

"Was the bleeding down of the units to be maintained a part of the job contemplated by the maintenance work mentioned in the above and foregoing interrogatories?

"Answer: I would say 'no' on that."

"Was the bleeding of the units to be maintained on the Anderson Lease at Big Hill, Texas, on or about February 16th, 1959, an integral part of the job to be performed by Bannister Construction Company for the Hudson Gas & Oil Corporation at said time and place?

"Answer: It was, but their man was supposed to bleed it off and we were supposed to repair it."

The facts in this case do not bring it within the "no duty" doctrine because it is not established as a matter of law that plaintiff knew of the dangerous condition, or that such dangerous condition was so open and obvious that plaintiff was charged with knowledge and appreciation thereof as a matter of law. Under the factual situation in this case, the knowledge of danger was not that plaintiff was working upon a high pressure line, but that plaintiff was working upon a high pressure line which had not been bled. As shown above, the evidence shows it was defendant's duty to bleed the line, and defendant's employee stated this had been done and that plaintiff should proceed with the work. This is analogous to a situation where an employee of an independent contractor is to perform work upon an electrical high line and the owner-contractor agrees to cut off the electrical power before such work is to begin. The condition becomes dangerous only if the electrical power is not cut off before the employee is directed to proceed with the work.

The facts in the present case also do not bring this case under the "volenti" doctrine. The facts do not establish as a matter of law that plaintiff knew the pipe line had not been bled of the gas and appreciated the danger of working upon such a line, and

voluntarily exposed himself to a known and appreciated danger. The law in this State is set out in Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172, as follows:

The decision to incur the risk must have been deliberate; i. e., made with knowledge and appreciation of the danger so that it may be said that the person acted as a result of an intelligent choice.

■ This case not coming with the "no duty" or "volenti" doctrines, was controlled by the determination of "negligence and contributory negligence". Issues of fact were raised by the evidence as to whether defendant was guilty of acts of negligence which proximately caused the injuries to plaintiff, as well as issues of fact as to whether plaintiff was guilty of acts of contributory negligence which proximately caused his injuries.

Defendant cites the case of Western Auto Supply Co. v. Campbell, (Tex.) 373 S.W.2d 735, as authority for the proposition that the true grounds upon which the occupier's liability for personal injuries arising from dangerous conditions of land rests in his superior knowledge of the dangers thereon. The evidence in the Campbell case, is that an employee of the defendant warned plaintiff of the dangerous condition and the jury found that the plaintiff had been so warned. There is no evidence of such a warning in the present case, and we find no application of the law of the Campbell case, supra, to the facts of this case.

Defendant cites the case of Moore v. Texas Company, Tex.Civ.App., 299 S.W.2d 401, as authority supporting the action of the trial court in instructing a verdict for defendant in this present case. The Moore case holds that an employee of an independent contractor may not recover if the danger resulting in the injury arises from the performance of the work rather than from the condition of the premises. If it had been established conclusively that bleeding the gas line was a part of the work plaintiff was engaged in at the time of the incident, then undoubtedly the Moore case, supra, would have application. However, viewing the evidence in its most favorable light to plaintiff, this fact was not established.

Defendant cites the case of Gulf Oil Corp. v. Bivins, 5 Cir., 276 F.2d 753, as authority for the proposition that the duty on the part of the owner or occupier of land to warn the employees of an independent contractor is discharged if those in charge of the work for the independent contractor are given warning or have knowledge of the danger. The danger in the present case was the accumulation of the gas in the line which caused the explosion, and the facts did not establish as a matter of law that those in charge of the work had been given warning or that they had knowledge of the danger.

■ Defendant contends this case must be affirmed because the record shows the statement of facts does not contain all of the evidence and that it must be presumed that the evidence was sufficient to sustain the judgment.

The record contains the defendant's motion for instructed verdict filed at the close of plaintiff's case, which was granted by the court. This motion put both parties on notice as to the issues in controversy which could be raised on appeal. The record shows the attorney for plaintiff wrote the court reporter a letter requesting certain testimony be included in the statement of facts and certain testimony be omitted. A copy of such written designation was filed with the district clerk, and a copy was sent to the attorney for defendant. No request was made by the attorney for defendant that any further testimony be included in the statement of facts.

The action of plaintiff's attorney is authorized by the rules of civil procedure. Rule 377, sec. (b), Texas Rules of Civil Procedure, provides in part as follows:

" * * * All matters not essential to the decision of the questions presented on appeal shall be omitted. * * *"

Sec. (c) of such rule reads as follows:

"Promptly after notice of appeal is given and where a request is made of the official court reporter for the preparation of a transcript of all or any part of the evidence adduced on the trial of the case, or whenever, with or without such a request, a statement of facts is filed or offered for filing by appellant, the appellant shall deliver or mail to the appellee or his counsel and file with the clerk of the court a designation in writing of the portions of the evidence desired, and shall specify the portions desired in narrative form, if any, and the portions desired in question and answer form, if any, and the portions that are desired to be omitted. Within ten days thereafter any other party to the appeal may file a designation in writing of any additional portions of the evidence to be included, specifying the portions desired in narrative form, if any, and the portions desired in question and answer form, if any."

The certificate by the court reporter shows the statement of facts includes only the evidence requested by plaintiff. The certificate approving the statement of facts signed by the attorneys also shows it includes only the portion of the evidence requested by attorney for plaintiff.

No objection was made by attorney for defendant to the filing of the statement of facts with the clerk of this court, and no motion to strike was filed by attorney for defendant under Rule 404, T.R.C.P.

This being an instructed verdict case, as already stated in this opinion, this court must view the evidence in its most favorable light to plaintiff in determining whether or not issues of fact were raised by such evidence. Even though that portion of the evidence omitted may have been unfavorable to plaintiff, the only burden plaintiff has on this appeal is to show the evidence raised issues of fact and not that such issues were proved as a matter of law, or by

the weight of the evidence. The record shows that the plaintiff's testimony is included in the record so as to eliminate the question of plaintiff having made admissions upon which an instructed verdict could have been granted, that could have been in the omitted part of the record. The point is overruled.

█ In the last point of error, defendant contends that this appeal should be dismissed because no final judgment was rendered by the trial court. The record shows that defendant impleaded Banister as a third party defendant, that Banister filed a motion for summary judgment and that such motion was granted. Judgment accordingly was entered and defendant gave notice of appeal; however, no further action was taken by any of the parties. The final judgment, entered later, disposed of the controversy between plaintiff and defendant and no mention was made as to the claim of defendant against Banister. Defendant argues that neither of these judgments is a final judgment because neither disposes of all of the parties nor all of the issues. Sisttie v. Holland, Tex.Civ. App., 374 S.W.2d 803, is cited as authority for this position. This case cited did not involve the impleading of a third party defendant. Both defendants were original defendants and apparently separate causes of action were alleged against each defendant. In the Sisttie case the disposal of the suit between plaintiff and one defendant would not have disposed of the action against the other defendant. In the present case the action by defendant against Banister was for indemnity. The instructed verdict and judgment for defendant would dispose of the petition for indemnity. We hold, as it was held in Buchanan v. Thrasher, Tex. Civ.App., 387 S.W.2d 950, that even though the second judgment, called "Final Judgment", does not mention the previous summary judgment, it was merged to create a final judgment.

Reversed and Remanded.

### On Rehearing

On rehearing, it was pointed out to this court that the action of the trial court in granting the motion for summary judgment in favor of Banister Construction Company in the third party action brought by Hudson Gas and Oil Corporation was not appealed from and became final. It was not the intention of this court to disturb the ruling of the trial court upon such motion for summary judgment and such portion of the case is not remanded for trial, and undoubtedly will be specifically mentioned in any final judgment hereafter rendered in this cause.