The METHODIST HOSPITAL, Appellant,

v.

Juno Carl HUDSON, Appellee.

No. 449.

Court of Civil Appeals of Texas,
(14th Dist.).

March 17, 1971.

Rehearing Denied April 14, 1971.

Thomas S. Terrell, Sewell, Junell & Riggs, Houston, for appellant.

Harry S. Jones, Bates, Jones & Zoda, Houston, for appellee.

BARRON, Justice.

The plaintiff, Juno Carl Hudson, brought this suit against the defendant, The Methodist Hospital, to recover damages for bodily injuries sustained by Hudson when he slipped and fell in the bathroom adjoining his room in the defendant hospital. The case was tried to a jury. In answer to special issues the jury found that the defendant hospital negligently failed to provide a non-slip surface in the bathroom and that such negligence was a proximate cause of plaintiff's injuries. On the verdict of the jury the trial court rendered judgment for Hudson against The Methodist Hospital in the amount of $12,-500. From such judgment the defendant Methodist Hospital has perfected this appeal.

In November, 1967, Hudson was hospitalized in The Methodist Hospital for a period of about eight days for the treatment of Polymyositis, a disease which causes painful muscle spasms. On February 19, 1968, Hudson was again admitted into The Methodist Hospital and assigned the same room he had previously occupied in November, 1967. Hudson underwent a surgical operation known as a muscle skin and subcutaneous biopsy of the left shoulder on February 20, 1968. Three or four days after the biopsy operation was performed Hudson was told by a nurse that he had bathroom privileges, that is, he could bathe himself in the bathroom that adjoined his hospital room. The adjoining bathroom did not provide a bathtub or shower facility but contained only a lavatory and a commode. This bathroom was shared by Hudson and three other patients. On March 2, 1968, Hudson went into the bathroom, shaved, took a sponge bath and dried himself while standing directly in front of the lavatory. Hudson testified that the surface of the tile floor directly in front of the lavatory was wet and the floor at the rear of the bathroom appeared to be dry. Hudson stated that he stepped to the rear of the bathroom to change his pajamas to prevent the pajama bottoms from getting wet while he put them on. Plaintiff stated that he first put his left foot into the pajamas, steadied himself against the wall with his left hand and then started to pick up his right foot to put it in the right leg of his pajamas. As he began to pull up his pajamas his left foot slipped, he then suffered a spasm in his back and fell, injuring his left knee. Hudson testified that the cause of the fall was the slippery surface of the bathroom tile. In oral argument before this Court, it was conceded by counsel for Hudson that water on the bathroom floor had nothing to do with the fall, and that plaintiff's contention is that the floor was inherently and latently defective in that it was slippery at all times under normal circumstances.

The bathroom contained no stool or chair, and no orderly was assigned by anyone to assist Hudson, and no request was made for assistance. There was a towel rack beside the wash basin but the only

handrail for patient support was near the commode. The hospital, of course, knew plaintiff's physical condition was somewhat impaired, or materially impaired, at all necessary times.

The record shows that the bathroom floor was constructed of unglazed ceramic tile, the same type of tile floor used in all bathrooms at Methodist Hospital, as well as the bathrooms at Texas Children's and St. Luke's Hospitals in Houston. Unglazed, ceramic tile is a common and usual material to use in the construction of bathroom floors, because it is easy to keep clean. The floor was not waxed, but was cleaned by ordinary mopping.

It was further shown that plaintiff, until the date of the accident on March 2, 1968, had access to the identical bathroom and had used it many times before, the number of times estimated to be in excess of 17 times prior to the accident. There was no evidence of any other falls, any other accidents, or any other complaints about any bathroom floor. There was no foreign matter on the floor.

The trial court submitted 41 special issues to the jury. While several groups of negligence issues were submitted to the jury at the request of plaintiff, the jury found only one group of negligence issues in plaintiff's favor. The jury found that the hospital failed to provide a "non-slip" surface in the bathroom in question; that such failure was negligence and was a proximate cause of the injuries to plaintiff's knee. Judgment in favor of plaintiff was rendered on the three special issues above mentioned and the damage issue in the amount of $12,500 pursuant to the jury's verdict.

The defendant timely objected to the charge of the court in connection with the three special issues above on grounds that the submission was incomplete; and specific objections were made that the trial court had failed to submit any issue inquiring whether the condition of the surface of the bathroom floor was not open and ob-

vious; because the charge did not include a special issue inquiring whether such floor surface constituted a dangerous condition, and on the ground that each issue above had no support in the evidence. The defendant hospital contends that the burden of proof on this phase of the case is on the plaintiff and is a part of plaintiff's case, and consequently that it was the duty of plaintiff, Hudson, to request special issues to create liability in this type of case involving an occupier-invitee relationship. The plaintiff's position is the opposite, and he contends that such duty of requesting special issues under Rule 279, Texas Rules of Civil Procedure, is on the defendant in this type of case. Defendant's objections to the court's charge were carried forward in its motion for new trial and by appropriate points of error on this appeal.

The Methodist Hospital is appellant here, and it basically contends that there was no evidence that the condition of the floor was dangerous or constituted an unreasonable risk of harm to the plaintiff. It further contends that appellant's above mentioned objections to the court's charge that the submission was incomplete in this occupier-invitee situation should have been sustained by the trial court, and that its failure to do so was reversible error.

■ This is another difficult landowner, occupier-invitee case where the applicable rules of law are evasive and elusive. This case is basically controlled by the law stated in McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391, and Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, (Tex.Sup.). Simple negligence issues where proper objections are made, are insufficient as a general rule to fix liability of the landowner or occupier. We quote from Western Auto Supply Company v. Campbell, 373 S.W.2d 735, 736, (Tex.Sup.), a decision handed down after the Halepeska decision, supra:

"It has been held in this state that the occupier of premises owes a duty to use ordinary care to keep his premises in a

reasonably safe condition for his invitees or to warn. If there are dangers which are not open and obvious, he is under a duty to take such precautions as a reasonably prudent person would take to protect his invitees therefrom or to warn them thereof (citing Halepeska). The rule has been stated negatively: if the plaintiff knows of the condition and appreciates the danger thereof, the occupier owes no duty to the invitee to warn him of the danger."

And quoting from Halepeska, 371 S.W. 2d at p. 378:

"So in a suit by an invitee against the occupier, the invitee must not only prove that he was injured as a proximate result of encountering a condition on the premises involving an unreasonable risk of harm, but he must also prove, *as part of the plaintiff's case*, that the occupier owed him a duty to take reasonable precautions to warn him or protect him from such danger, i. e., the plaintiff must negative 'no duty'. This is the 'no duty' referred to in the cases. * * *" (Emphasis added). See also Houston Sports Association, Inc. v. Russell, 450 S.W.2d 741, 744-745, (Tex.Civ.App.), writ ref., n. r. e.

A leading and recent case on this question is Seideneck v. Cal Bayreuther Associates, 451 S.W.2d 752, (Tex.Sup.). In that case the plaintiff tripped on a rug in the defendant's showroom. The rug over which plaintiff tripped was a small rug with regular pile and a decorative fringe of loose weave and tassels. In affirming an instructed verdict for defendant the Supreme Court held that there was no evidence that the rug constituted a condition involving an unreasonable risk of harm and said:

"* * * Thus, the first steps in the proof of an injured invitee-plaintiff's case are to show (1) that the owner or occupier created or maintained on the premises some condition involving unreasonable risk of harm, McKee, 271 S.W.

2d at 393; and (2) that the plaintiff's injury resulted from his contact with that condition."

\* \* \* \* \* \*

"A condition presenting an unreasonable risk of harm is defined as one in which there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen. * * * It follows that an owner or occupier of land can be charged with knowledge and appreciation of a dangerous condition on his premises only if from a reasonable inspection a reasonably prudent person should have foreseen a probability that the condition would result in injury to another. * * * As might be expected with a matter involving the 'reasonable man' concept, there seems to be no definitive, objective test which may be applied to determine whether a condition presents an unreasonable risk of harm. Obviously, evidence of other falls attributable to the same condition, or evidence of defectiveness of the rug, floor, or other condition causing the fall would be probative, although not conclusive, on the question * * * There is no evidence in this record that during the time the rug had been on the floor anyone had previously tripped on it. There was neither an allegation nor is there evidence that the rug was defective in any manner. There is no evidence that this type rug, with 'regular pile' and a decorative fringe of loose weave and tassels, was unusual; or that its particular construction and placement would have served as a suggestion or warning to the defendants that it presented the prohibitive degree of danger, even if they had attempted a formal survey of the shop for dangerous conditions. * * *"

\* \* \* \* \* \*

"But we think, and so hold, that the evidence as it appears in the record of this case falls within the scope of the rule * * * to the effect that when the evi-

dence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, such evidence is in legal effect no evidence, and it will not support a verdict or judgment. * * *"

The Supreme Court considered three factors: (1) previous accidents attributable to the condition, (2) defectiveness of the rug, and (3) whether the condition was unusual. In the present case there is no evidence of any prior accidents attributable to a ceramic tile floor. There is here no evidence that the floor was defective in the sense that it was littered, waxed or unclean in any manner. There is no evidence in this record that it was unusual to have an unglazed tile floor in the bathroom. In fact, the evidence might have been just the opposite.

It was not appellee's physical condition which caused him to slip. Appellee states in his brief that when Hudson had pulled the right pajama leg to approximately knee level, his left foot *slipped on the tile surface*, the slip caused a sudden jerk that triggered sudden back pain and the *slip* caused plaintiff to fall. Appellee further states that the undisputed evidence is that the cause of Hudson's fall was the unobstructed, slippery surface of the bathroom tile. After a minimum of 17 prior visits to the bathroom, which includes bathing himself for the last 9 days preceding this accident, appellee had to be fully familiar with and appreciative of the dangers, if any, which might have existed by reason of the bathroom floor.

■ We hold that appellant owed the appellee no duty under the circumstances of this case. The controlling evidence has been summarized above, and in legal effect there is no evidence to support the judgment of the trial court. We can see no evidence that the particular construction and condition of the unglazed ceramic tile floor would have served as a suggestion or warning to the defendant hospital that such floor presented the prohibitive degree

of danger to an invitee of the hospital under the particular facts of this case.

■ However, if we have erred in our views above, we further believe the trial court committed reversible error in overruling appellant's objections to the trial court's charge. Most of the cases make it clear that "no duty" is a part of the plaintiff's case, and that it need not be pleaded by the defendant. In the "no duty" invitee cases, the plaintiff must prove the existence of a duty on the part of the landowner or occupier and a breach of that duty, and such burden is carried into the wording of the special issues. It has been said many times that the burden of proof is upon the plaintiff, as part of his case, to negative "no duty" in occupier-invitee situations. Halepeska v. Callihan Interests, Inc., supra; Wesson v. Gillespie, 382 S.W. 2d 921, 925, (Tex.Sup.); 16 Baylor L.Rev. 116; 44 Tex.L.Rev. 1054, 1056. The case of Western Auto Supply Company v. Campbell, supra, indicates that the burden of requesting special issues in a situation of this kind is on the plaintiff, who bears the burden of proof. See 373 S.W.2d 740. A decision on the question was held to be unnecessary in Wesson v. Gillespie, supra, 382 S.W.2d at p. 925. In El Rancho Restaurants, Inc. v. Garfield, 440 S.W.2d 873, 878, (Tex.Civ.App.), writ ref., n. r. e., the San Antonio Court of Civil Appeals stated that "no duty—open and obvious" issues were in the nature of inferential rebuttal issues and should be pleaded by the defendant. Neither Volenti Non Fit Injuria, a recognized defensive group of special issues, nor "no duty" were there pleaded. The holding that "no duty" is an inferential rebuttal issue has been criticized. See 24 S.W.Law J. 5.

■ Of course, "Volenti" is a defensive issue and must be pleaded, proven and requested by the defendant. See Halepeska, 371 S.W.2d p. 379. Since the burden of proof in a "no duty" situation is on the plaintiff, and since we think there is no obligation on the part of the defendant to

plead it, we hold that the burden is on the plaintiff to request the necessary "no duty" special issues to create liability in an occupier-invitee situation. See Seideneck, McKee, and Halepeska, supra. Such issues —actually knowing of the alleged condition and appreciating the danger—being a part of plaintiff's case, plaintiff had the burden of requesting the issues, and defendant's objections were sufficient to preserve the error. See Rule 279, T.R.C.P.; Lewis v. American Surety Co., 143 Tex. 286, 184 S. W.2d 137. Plaintiff's only attempted proof of the issues on liability came from the plaintiff himself, and while we have held that such evidence created no more than a mere surmise or suspicion under the circumstances, plaintiff's testimony under such circumstances could in no event create more than issues of fact. Plaintiff's burden in such a situation has generally been recognized. See 15 Texas Practice, Mitchell and Gilbert, Sec. 5148, note 14, pp. 551, 552; Kronzer, Special Issue Submission, 2 Houston L.Rev. 1.

■ The appellant hospital pleaded the defense of "Volenti" and requested special issues in connection therewith. In special issue No. 19 the jury found that appellee had knowledge of the condition of the floor, and in special issue No. 20 it found that appellee did not appreciate whatever risk there was in putting on his pajamas. These issues were couched in terms of defensive issues with the burden of proof on the appellant-defendant in an attempt to prove defensively volenti non fit injuria. This means in law only that appellant failed to carry its burden of proving the defensive facts. See C. & R. Transport v. Campbell, 406 S.W.2d 191, 194, (Tex.Sup.). It does not mean that the appellee carried its burden of proof on the "no duty" issues.

We have examined carefully all contentions made, and we are of the opinion that the judgment of the trial court should be reversed and here rendered in favor of the appellant hospital.

Reversed and rendered.