Hermelinda BOSQUEZ, Appellant,

v.

**H. E. BUTT GROCERY COMPANY,**
Appellee.

No. 1416.

Court of Civil Appeals of Texas,
Corpus Christi.

Aug. 30, 1979.

Rehearing Denied Sept. 21, 1979.

David L. Perry, Edwards & Perry, Corpus Christi, for appellant.

George G. Brin, Dyer & Redford, Corpus Christi, for appellee.

OPINION

BISSETT, Justice.

This slip and fall case involves an appeal from a take nothing judgment. The basic facts of the case are simple. Hermelinda Bosquez (plaintiff) was a customer in defendant's grocery store. While shopping for groceries, plaintiff slipped on a quantity of baby food and fell, thereby sustaining personal injuries. The baby food had spilled onto the floor from a broken jar, which was found, after the accident, upon a shelf. There was no evidence of how or when the jar was broken or how the baby food came to be on the floor.

The case was tried to a jury under theories of negligence and strict liability. In its verdict, the jury absolved both plaintiff and defendant of any negligence. In response to the strict liability issue, the jury found that the jar of baby food, while not defective at the time it was placed on the shelf by defendant, was defective at the time plaintiff slipped and fell. Further, the jury found that this defect was a producing cause of plaintiff's accident. Damages were awarded in the sum of $14,754.71. Judgment that plaintiff take nothing by her suit was rendered by the trial court. Plaintiff has duly perfected an appeal from the judgment. We affirm.

By her first point of error, plaintiff contends that the trial court erred in entering a judgment *non obstante veredicto* because

the jury verdict is fully supported by the evidence and requires judgment for plaintiff. We disagree.

Based upon the jury's verdict, plaintiff moved for judgment in the amount of $14,-754.71. On the same day, defendant made its own "Motion for Judgment" which contended that the findings of the jury established that plaintiff had failed to prove any cause of action. Judgment was rendered by the court in favor of defendant based upon this "Motion for Judgment."

■ As a threshold matter, we agree with defendant that the judgment before us is not a judgment *non obstante veredicto.* Ostensibly, the judgment was rendered in conformity with the jury's finding that the jar of baby food was defective at the time plaintiff fell. Furthermore, defendant does not complain of that finding. In point of fact, defendant concedes in its brief that the jar of baby food was defective at the time of plaintiff's fall. The issue before this Court, therefore, is not whether the trial court erred in disregarding the jury's findings, but whether those findings, accepted as true, can support a judgment for plaintiff as a matter of law. We hold, as a matter of law, that the jury's findings cannot support a judgment for plaintiff under the theory of strict liability.

In *Shopper's World v. Villarreal,* 518 S.W.2d 913 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.) this Court was faced with deciding the crucial time at which a user or consumer must establish that a defect existed in the context of a self-service grocery store format for purposes of recovery under strict liability. In that case, plaintiff was injured when she slipped on some liquid soap that had leaked from a bottle which she had just taken from a grocery store shelf and placed in her shopping cart. In construing Restatement (Second) of Torts § 402A(1)(b), which provides that a seller is liable if the defective product "is expected to and does reach the user or consumer without substantial change in the condition in which it is sold," this Court held that the term "sold" was equivalent to "the time when the party

seeking to hold a seller liable picks up an item for handling or purchase." Thus, where a customer was injured by a defective product while shopping at a self-service store the key issue was whether the defect existed at the time the product was removed from display.

In the case at bar, the jury found, and both sides agreed, that the baby food jar was in a defective condition at the time plaintiff slipped and fell. Plaintiff contends that, under the rule enunciated in *Villarreal,* a "sale" of the jar of baby food took place sometime after the defect arose (when the jar was broken, leaving a residue of baby food on the floor). Further, plaintiff contends that she was a bystander and under the rule announced in *Darryl v. Ford Motor Company,* 440 S.W.2d 630 (Tex.Sup. 1969), she should recover for injuries sustained by her as a result of the sale of the jar of baby food while in its defective condition.

We have no quarrel with plaintiff's status as a bystander. We disagree, however, with her application of *Villarreal* to the facts of this case. Plaintiff had the burden of proving that the defective product reached her "without substantial change in the condition in which it [was] sold." There is no evidence as to when or how the baby food jar became defective. Most importantly, we do not know if or when a "sale" of the jar ever took place.

We could assume for purposes of argument that the jar was broken before it was ever taken from the shelf (purchased) by another customer. That, however, is sheer speculation. It is just as possible that another customer removed the jar from the display (purchased the product) and dropped it (rendered the jar defective) such that no defect ever existed at the time the product was sold. In such a case the product would not have reached plaintiff in substantially the same condition it was in when it was sold to the third party, if such a sale was, in fact, made. Hence, the jury finding that the jar was defective at the time plaintiff slipped only established a defect sometime *after* a sale, if any, of the product.

Plaintiff's theory of strict liability and her request that this Court extend its rule in *Villarreal* to the facts of the case at bar, constitute an attempted end run around the well established rule of liability when injury is caused by a foreign substance upon a floor which rendered it slippery or unsafe for use. That rule was ably set out by Justice Norvell in *H. E. Butt Grocery Co. v. Johnson*, 226 S.W.2d 501 (Tex.Civ.App.—San Antonio 1949, writ ref'd n.r.e.), wherein it was held:

"In order to establish liability against the defendant operator of the store it is necessary to show:

1. That the defendant put the foreign substance upon the floor, or

2. That the defendant knew the foreign substance was on the floor and wilfully or negligently failed to remove it, or

3. That the foreign substance had been upon the floor for such a period of time that it would have been discovered and removed by the defendant, had the defendant exercised ordinary care.

See *Houston National Bank v. Adair*, 146 Tex. 387, 207 S.W.2d 374; *Woolworth v. Goldston*, Tex.Civ.App., 155 S.W.2d 830; *Great Atlantic & Pacific Tea Co. v. Logan*, Tex.Civ.App., 33 S.W.2d 470."

The jury in the present case failed to find that defendant's employees knew of the baby food on the floor before plaintiff's slip and fall. Further, there were no findings that defendant's employees placed the baby food on the floor; there was no finding of how long the baby food had been on the floor prior to plaintiff's fall. Thus, to hold that plaintiff may recover based solely upon the mere existence of a defect at the time of the accident would fly in the face of settled precedent in grocery store slip and fall cases. A storekeeper is not an insurer of the safety of the invited customers who enter the store for the purpose of shopping. *McElhenny v. Thielepape*, 155 Tex. 319, 285 S.W.2d 940 (1956); *Great Atlantic & Pacific Tea Company v. Giles*, 354 S.W.2d 410 (Tex. Civ.App.—Dallas 1962, writ ref'd n.r.e.); *Newton v. General Manager of Scurlock's Supermarket*, 546 S.W.2d 76 (Tex.Civ.App.

—Corpus Christi 1977, no writ). Plaintiff failed to prove a case of strict liability. Plaintiff's first point is overruled.

By her points of error 2 through 9, plaintiff complains of the trial court's refusal to submit some of her requested issues as well as an accompanying instruction. In disposing of these points, we adhere to the settled rule that only controlling issues raised by the pleadings and evidence should be submitted to the jury. Rule 277, T.R.C.P.

Plaintiff's requested issues and instruction essentially fell into three groups. The first group, consisting of requested issues 1A and 2 accompanied by requested instruction 2, sought to establish liability of the defendant for knowingly allowing foreign food substances to be on the floor so as to create an unreasonable risk of harm. The second group, consisting of requested issues 1B, 1C, 2, 3, 4, 6, 6A, 7 and 8 accompanied by requested instruction 2, sought to establish liability of the defendant for failing to use some type of skid-resistant floor covering in its store. Under this theory an unreasonable risk of harm would be created by the combination of slippery food products and the store's resilient tile floor covering. Finally, the third group, consisting of requested issues 9, 9A, 10 and 11, sought to establish liability of the defendant for failing to inspect its floor for the presence of food substances and failing to warn plaintiff of the danger of foreign food substances on its floors.

The duty which an occupier of premises owes to an invitee is that which was summarized in Restatement (Second) of Torts § 343 (1965) and adopted by our Supreme Court in *Adam Dante Corporation v. Sharpe*, 483 S.W.2d 452 (Tex.Sup.1972):

"§ 343. Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger. The occupier is under the further duty to exercise reasonable care in inspecting the premises to discover any latent defects and to make safe any defects or to give an adequate warning. Restatement (Second) of Torts § 343, Comment b (1965)."

The import of Section 343 of the Restatement, and its adoption by the Court in *Adam Dante*, was further explicated in the supermarket context in *Rosas v. Buddies Food Store*, 518 S.W.2d 534 (Tex.Sup.1975). There, the Supreme Court, in its cautionary explanation that a finding of no danger will absolve the supermarket of any duty, noted that whether a condition of the floor constitutes a danger is a "function of reasonableness." 518 S.W.2d, at page 537; Hence, if an ordinarily prudent man could foresee that harm was a likely result of a condition, it would be a danger. 518 S.W.2d, at page 537; *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752 (Tex.Sup.1970).

Plaintiff's evidence consisted of live and documentary evidence, including comparative accident frequency reports of a statistical nature, indicating the common occurrence of slip and falls primarily attributable to foreign food substances on the floors of grocery stores, including defendant's store in question. There was further testimony of alternative floor coverings which offered increased skid-resistance and resistance to breakage. In essence, all of plaintiff's evidence was calculated to show the significance of the choice of floor coverings to hazard prevention, the availability of skid-resistant floor coverings, the foreseeability in general of foreign food objects remaining on the floor and the lack of any policy insuring adequate inspection or warning in defendant's store.

■ Viewing the evidence in a light most favorable to the plaintiff, we cannot say that defendant owed a duty to plaintiff to use a non-skid floor surface because there is no evidence that the particular construction and condition of the resilient tile floor would have served as a suggestion or warning to defendant that such a floor presented a prohibitive degree of danger under the particular facts of this case. See *Methodist Hospital v. Hudson*, 465 S.W.2d 439 (Tex. Civ.App.—Houston [14th Dist.], writ ref'd. n.r.e.). Furthermore, even assuming that such a duty existed, there was no evidence that the failure of defendant to use a non-skid floor covering was, under the circumstances of this case and in this particular store, negligence which was a proximate cause of plaintiff's injuries.

■ Plaintiff's argument concerning the duty to warn appears to encompass a duty to warn of *potential* dangers because some food products in the store *might* sometime fall on the floor and become slippery, as well as a duty to warn of actual dangerous conditions which do not presently exist, particularly where the potential dangers, their causative factors and physical manifestations are as apparent to invitees as land occupiers.

There is nothing in the record to suggest any duty of defendant in this particular case to warn plaintiff of the baby food on the floor. Specifically, there was no evidence as to who put the baby food on the floor, or how long it had been there. The facts do not charge the defendant with any actual or constructive knowledge of the presence of the baby food on the floor. *Sherwood v. Medical & Surgical Group, Inc.*, 334 S.W.2d 520 (Tex.Civ.App.—Waco 1960, writ ref'd); *H. E. Butt Grocery Co. v. Johnson*, 226 S.W.2d 501 (Tex.Civ.App.—San Antonio 1949, writ ref'd n.r.e.). The question of knowledge of the defendant's employees of the baby food being on the floor was largely covered by special issue number 1, which was answered favorably to defendant. Plaintiff's points 2 through 9 are overruled.

■ By her tenth and eleventh points, plaintiff complains of the trial court's overruling of her objections to defendant's jury

argument and sustaining of defendant's objections to her own jury argument. During the course of plaintiff's opening argument to the jury the following exchange between Mr. Perry, the attorney for plaintiff, and Mr. Brin, the attorney for defendant, took place:

"MR. PERRY: And one of the things that you can take into considering in deciding this issue is that the defendant, H. E. B., according to their own answers to their own interrogatories have four store employees who knew what the condition of the floor was before Mrs. Bosquez fell, only one of whom testified, three of whom did not.

MR. BRIN: Your Honor, that is improper jury argument. We object to it. Those witnesses are perfectly available by subpoena by Mr. Perry. It's improper for him to comment on the failure of them to be called.

COURT: Objection overruled.

MR. PERRY: Now every one of those people was their employee, we know logically and simply, and there is a fifth one who is the husband of one of their employees. The people are Beto Gonzalez, the night manager; Larry Mendoza, Bobby Mora—testified, but the people who did not—Beto Gonzalez, the night manager; Larry Mendoza; Mrs. Tim Gonzalez and Mr. Tim Gonzalez, who is her husband. According to their answers to interrogatories, all of those people knew of the condition of the floor.

Now Bobby Mora basically said he didn't know about it. He hadn't seen it; he didn't know how long that baby food was there. I think you and I all know that if the employees' own testimony from H. E. B. would have been favorable to them, it would have been presented to you either by live testimony or by deposition or in some fashion, but it wasn't."

During defendant's reply argument counsel for defendant rhetorically responded to plaintiff's opening remarks and the following exchange took place:

"MR. BRIN: Now here's a lady that has come into court and has asked for a great deal of money, as she has every right to and you have been asked to find a yes answer in response to that interrogatory on the basis that we didn't call several people whose names were read to you after the close of all the evidence, when Mr. Perry asked leave to re-open—and how long had David Perry known about these people—more than two years.

MR. PERRY: Well, Your Honor, I object to him talking about me not calling people that he knows I can't even talk to under the Canons of Ethics without going through his law firm. Those people are not my employees; they are not my clients. They are some of their employees that I don't even know the names of because they weren't listed in the answers as even being employees until Mr. Mora told us they were there, and I object to counsel commenting on us not calling people that are not peculiarly subject to the control of the plaintiff. And I point out to the Court that that argument is in error under Sanders against Saint Paul.

COURT: I will overrule the objection."

Finally, during rebuttal, counsel for plaintiff attempted the following argument:

"You want to know why I didn't go and talk to those people—I didn't know who they were; I didn't know their names, addresses, where they lived. I don't know anything about them. I didn't know they existed until Mr. Mora stood up here on the stand and said they existed. But H. E. B. would have had everyone of them in here if their evidence would have been favorable because they have their names and addresses and phone numbers. You want to know the reason I didn't go to talk to Beto Gonzalez? Because under the rules of the Canons of Ethics that lawyers operate under, I'm not allowed to go and talk to an employee of an opposing party without going through their lawyer. I can't go over and take a statement from them; I can't go over and ask them what happened because their lawyer is the person

who is entitled to go talk to them, and it would be a violation of the Canons of Ethics for me and/or anybody employed by me or my firm to go and do that. That's the reason the law provides that you can consider the failure of a party to call a witness that is peculiarly within their knowledge and within their control as evidence that that testimony would be unfavorable to them.

MR. BRIN: We're going to object to the statement to this jury that these people were peculiarly under our control. Two of them were not our employees. Everyone of them was available for subpoena. It's not true to say that they are peculiarly under our control.

COURT: Objection sustained.

MR. PERRY: The Court's ruling that I cannot argue that their employees, the former employee, and the wife of an employee was within their control.

COURT: He has just stated that some of them didn't even work there, counsel.

MR. PERRY: Everyone I have mentioned, I am making argument about the people that according to the Interrogatories I read were employees at the time, except for one who was the wife of an employee.

COURT: I also sustained his objection about the deposition."

Our Supreme Court has very recently discussed the law relating to improper jury argument. In *Standard Fire Insurance Co. v. Reese*, 584 S.W.2d 835 (Tex.Sup.1979), the Court said:

"In the case of improper jury argument, the complainant must prove a number of things. He has the burden to prove (1) an error (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. 3 McDonald, Texas Civil Practice § 13.-17.2 (1970). There are only rare instances of incurable harm from improper argument. The complainant has the further

burden to prove (5) that the argument by its nature, degree and extent constituted reversibly harmful error. How long the argument continued, whether it was repeated or abandoned and whether there was cumulative error are proper inquiries. All of the evidence must be closely examined to determine (6) the argument's probable effect on a material finding. (7) Importantly, a reversal must come from an evaluation of the whole case, which begins with the voir dire and ends with the closing argument. The record may show that the cause is weak, strong, or very close. From all of these factors, the complainant must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence. *Aultman v. Dallas Ry. & Term. Co.*, 152 Tex. 509, 260 S.W.2d 596 (1953). Rules 434, 503, Tex.R.Civ.P."

Applying the rules set out in *Reese* to the facts of the case at bar, we do not find any reversible error in the trial court's rulings relating to the jury arguments. Plaintiff's points 10 and 11 are overruled.

AFFIRMED.